WILLIAM E. CRAMER, Plaintiff in Error,

*vs.*

JOSIAH A. NOONAN, Defendant in Error.

ERROR TO RACINE CIRCUIT COURT.

An inuendo in a declaration in slander can only be resorted to for the purpose of applying the words to a particular subject matter already introduced, and cannot enlarge or extend their meaning.

To print and publish of another that he "forged sentiments and words for Silas Wright," which he never uttered," is not libelous.

The declaration alleged that the defendant published of and concerning the plaintiff, that, "he is as versatile in circumventing the law of right as the famous Monroe Edwards," with a colloquium setting out that Monroe Edwards was a notorious forger and swindler, and had been convicted and imprisoned for such crimes; *Held*, that such charge is libelous.

To charge one with being "a spy upon the mercantile community, whose slanderous reports had nearly ruined some of the best merchants of the city," is libelous.

In actions for slander or libel, the jury are not limited to the actual damage sustained, but may award exemplary damages.

THIS was an action on the case for libel, brought by the defendant in error against the plaintiff in error, and tried at the Racine Circuit, where the plaintiff below recovered a judgment for $200 damages and costs.

The declaration contained three counts. After the usual inducement, and reciting that the defendant was the proprietor and editor of a daily newspaper, the *Daily Wisconsin*, published in the city of Milwaukee, proceeds: "And whereas also a certain person named Monroe Edwards, was a man of odious character, had therefore committed many frauds and forgeries, and had become notorious for the same, and for the ingenuity practiced in the commission thereof, and had been tried and convicted of the crime of forgery, and imprisoned therefor in one of the state prisons of the state of New York. Yet the said defendant, not regarding the premises aforesaid, but contriving and maliciously intending to draw and bring the said plaintiff into disgrace, contempt and ignominy with the faithful and honest citizens of the said state, and to cause it to be believed that the

said plaintiff was a man of odious character, and by his many frauds and crimes, had become notorious, and as well known therefor as the said Monroe Edwards, and that he, the plaintiff, at the time of the committing of the grievances hereinafter mentioned, was with equal ingenuity and wickedness committing frauds and crimes, and was guilty of offences against morality and the laws of this state, and to vex, harass and oppress him, the said plaintiff, on the eleventh day of November, in the year one thousand eight hundred and fifty-three, at the city of Milwaukee, in the county aforesaid, falsely, wickedly and maliciously, did compose and publish, and cause and procure to be published in said newspaper, the *Daily Wisconsin*, of and concerning him, the plaintiff, a false, scandalous, malicious and defamatory libel, containing, amongst other things, the false, scandalous, malicious, defamatory and libelous matter following, of and concerning the said plaintiff, that is to say,—"since the postmaster (meaning the plaintiff) forged sentiments and words for Silas Wright (meaning Silas Wright, deceased, and formerly governor of the state of New York), which he (meaning said Wright) never uttered, no one need suppose that he would be scrupulous about this last fabrication (meaning a certain paragraph or sentence contained in a certain newspaper, the *Free Democrat*, of the tenor following: It is stated that the editor of the *Wisconsin* bolted Mr. McGarry, and privately went in for Dr. Chase). He (meaning the plaintiff) is as versatile as the famous Monroe Edwards, in circumventing the law of right; but the *Sentinel* (meaning a newspaper, the *Milwaukee Sentinel*) in its better and more honorable days, would not have consented to be the tool of a person (meaning the plaintiff) of so desperate a character (meaning of a character as desperate as the said Monroe Edwards) to wit, at the county aforesaid. And the said plaintiff further saith that he, the plaintiff, being postmaster, and the defendant being the editor and proprietor of the said newspaper, as in the foregoing count mentioned, and also that one Monroe Edwards had committed the crime of forgery, and had become notorious for the extent and number of his forgeries, the said plaintiff further contriving, as in said count mentioned, and intending to cause it to be believed that the plaintiff, to deceive and cheat, contrary to morality and justice, had and did commit

the crime of forgery afterwards, to wit, on the day and year aforesaid, and at the county aforesaid, falsely, wickedly, maliciously, wrongfully and unjustly did publish, and cause and procure to be published in the said newspaper, the *Daily Wisconsin*, a certain other false, scandalous, malicious and defamatory libel, of and concerning the plaintiff, containing amongst other things, certain other false, scandalous, malicious, defamatory and libelous matter of and concerning the plaintiff, as follows, that is to say: He (meaning the plaintiff) is as versatile as the famous Monroe Edwards in circumventing the law of right (meaning that the plaintiff did commit the crime of forgery, and was as ingenious and adroit in committing the crime of forgery as the said Monroe Edwards), but the *Sentinel* (meaning the proprietors and editors of the newspaper, the *Milwaukee Sentinel*) in its (the said newspaper) more honorable days, would not have consented to be the tool of a person (meaning the plaintiff) of so desperate a character (meaning of a character as desperate as that of a forger), to wit, at the county aforesaid. And also, for that whereas, the said plaintiff now is, and hitherto hath been, a good, true, honest, just and faithful citizen of this state, and as such hath always behaved and conducted himself, and until the committing of the several grievances by the said defendant, as hereinafter mentioned, was always reputed, esteemed and accepted by and amongst all his neighbors and other good and worthy citizens of this state, to whom he was in any wise known, to be a person of good name, fame and credit, to wit, at the county of Milwaukee aforesaid. And whereas, also, the said plaintiff hath not ever been guilty, or until the time of committing of the grievances by the said defendant as hereinafter mentioned, been suspected to have been guilty, of the offences and misconduct hereinafter mentioned, to have been charged upon and imputed to him by the said defendant, or of any other offences or misconduct. By means of which said several premises the said plaintiff, before the committing of the several grievances hereinafter mentioned, had deservedly obtained the good opinion and credit of all his neighbors and other good and worthy citizens of this state, to whom he was in any wise known, to wit, at the county of Milwaukee aforesaid.

And whereas, before and at the time of the committing of the

Cramer vs. Noonan.

grievances by the said defendant as hereinafter mentioned, the said plaintiff was the postmaster at the city of Milwaukee, in the county aforesaid, and the defendant was the proprietor and editor of a certain newspaper, the *Daily Wisconsin;* and whereas, also, therefore one Lewis Tappan, of the city and state of New York, was the proprietor of a certain mercantile agency in the city of New York, for the procurement of information relating to business men and merchants. Yet the said defendant, well knowing the premises, and contriving and wickedly and maliciously intending to injure him in his good name, fame and credit, and to bring him into public scandal, infamy and disgrace, with and amongst all his neighbors and other good and worthy citizens of this state, and particularly with the business men and merchants of the city of Milwaukee, and to cause it to be believed that the plaintiff had been an agent at the city of Milwaukee, of the said Tappan's mercantile agency, and that he, the plaintiff, had made false and calumnious reports to said Tappan's mercantile agency at New York, aforesaid, concerning and of merchants and business men of the city of Milwaukee; that thereby merchants of the said city were greatly damaged and had been nearly ruined in their business and trade—afterwards, to wit, on the eleventh day of November, in the year one thousand eight hundred and fifty-three, at the county of Milwaukee, aforesaid, falsely, wickedly and maliciously did compose and publish, and cause and procure to be published, in said newspaper, the *Daily Wisconsin,* of and concerning him, the said plaintiff, a certain other false, scandalous, malicious and defamatory libel of and concerning the said plaintiff, of the tenor following, to wit: The *Sentinel's* (meaning the newspaper, the *Milwaukee Sentinel*) new association. Its (meaning the *Milwaukee Sentinel*) advocacy of the Atlanta Bank, naturally prepared the *Sentinel* (the said newspaper) to do the dirtiest work for the postmaster (meaning him the plaintiff), and now as a renegade whig journal, it dives under the postmaster's (meaning the plaintiff), cloak, who (meaning the plaintiff) was not long since (as we have been credibly informed) a spy (of that noted abolitionist, Lewis Tappan) on the mercantile community of this city (meaning the city of Milwaukee). His (meaning the plaintiff) scandalous reports (meaning reports of the plaintiff to the said

Lewis Tappan, proprietor of the mercantile agency in the city of New York) nearly ruined some of our best merchants (meaning most responsible merchants of the city of Milwaukee). Of course the *Sentinel* and the *News*, his twin organs, will deny this, but let those who doubt, go to New York city and ask Lewis Tappan (meaning Lewis Tappan, the proprietor of said mercantile agency), if J. A. Noonan (meaning the plaintiff) has not been one of the spy agents (meaning agent of said Tappan) in Milwaukee, on the mercantile community of this city. The *Sentinel* naturally fraternizes with such a character, to wit, at the county aforesaid. By means of the committing of which said several grievances by the said defendant, the plaintiff hath been, and is greatly injured in his good name, fame and credit, and brought into public scandal, infamy and disgrace, with and amongst all his neighbors, and other good and worthy citizens of this state, to whom he was in any wise known, insomuch that divers of those neighbors and citizens to whom the innocence of the said plaintiff, in the said offences and misconduct so as aforesaid mentioned to have been charged upon and imputed to the said plaintiff, were unknown, have on occasion of the committing of the said several grievances by the said defendant, from thence hitherto suspected and believed, and still do suspect and believe, the said plaintiff to have been guilty of the offences and misconduct so as aforesaid mentioned to have been charged and imputed to him as aforesaid, and have by reason of the committing of the said several grievances by the said defendant, from thence hitherto refused, and still do refuse, to have any acquaintance, intercourse or discourse with the plaintiff.

On the trial, the plaintiff below read in evidence, the two several articles mentioned in the declaration, from a newspaper called the *Daily Wisconsin*, published in the city of Milwaukee (the defendant admitting that he was proprietor, publisher and editor), of the date of November 11, 1853; also an exemplification of the record of conviction and sentence of Monroe Edwards for forgery, in the county and state of New York, on the 17th day of October, 1842. The plaintiff then introduced in evidence his commission as postmaster at Milwaukee, and proved by a witness, that the character of Monroe Edwards was that of an

accomplished forger. It was also admitted that the defendant was worth from $15,000 to $18,000.

The plaintiff having here rested, the defendant's counsel moved the court for a nonsuit, on the ground: 1. That the several matters contained in the declaration as therein set forth, are not libelous *per se;* 2. That though libelous *per se,* the plaintiff had, by introductory averments and inuendoes, given to the articles set forth as libelous, a particular sting and meaning, and had failed to prove the said introductory averments and thus support the inuendoes. This motion was overruled and the defendant excepted.

The defendant then produced eight witnesses, by whom he proved that the general character of the plaintiff was bad, and the defendant, by a like number, that it was good.

Many exceptions were taken to the ruling of the court below, in the instructions to the jury given and refused. Among other things the court instructed the jury, that the charge set forth in the declaration that the plaintiff had "forged words and sentiments for Silas Wright, which he never uttered," were libelous *per se;* and as to the question of damages, the jury were not confined to actual damages; that they might if they saw fit, give exemplary damages; that it was peculiarly a question for the jury, and was within their discretion to give any amount of damages, which, in their judgment, the case demanded, from six cents up to the amount ($10,000) claimed in the declaration.

One other point in the charge, though not expressly noticed in the opinion of this court, may be stated, as it was made the subject of argument at the bar, and was passed upon by the court, which was as follows:

"If the words of the alleged libel admit of more than one construction, one which may be innocent, and one which is libelous; or when it would be doubtful, whether it would be libelous or not, it is a question of fact for the jury to find. But if the words do not admit of an innocent construction, if the alleged publication *per se* is libelous, if it necessarily impute a charge involving moral turpitude, and which holds up an individual to scorn and contempt, it is the duty of the court, in a civil suit between party and party, to declare the publication a libel *per se,* if the jury are satisfied that it was published by the

defendant of and concerning the plaintiff. It is a responsibility from which the court could not withdraw itself if it would, and herein is the distinction between civil suits, between party and party, when either may except and have the case reviewed in the court of last resort, and criminal prosecutions for libel, in which, by our constitution and laws, the jury are made the judges of the law and fact." To which rulings and decisions of the court the defendant excepted.

*Yates and Lynde*, for the plaintiff in error.

*Arnold*, for the defendant in error.

*By the Court*, WHITON, C. J. The motion for a nonsuit, which was made after the evidence on the part of the plaintiff had been given, and the motion in arrest of judgment, were both founded on supposed defects in the declaration. It will be necessary, therefore, to examine the declaration, and ascertain whether it sets out a good cause of action. It contains three counts. The first count (rejecting the inuendoes) sets out the alleged libel as follows: "Since the postmaster forged sentiments and words for Silas Wright, which he never uttered, no one need suppose that he would be scrupulous about this last publication. He is as versatile as the famous Monroe Edwards in circumventing the law of right; but the *Sentinel*, in its better and more honorable days, would not have consented to be the tool of a person of so desperate a character." This count contains a *colloquium* to the effect that Monroe Edwards was a man of odious character, had committed many frauds and forgeries, and had become notorious for the same, and for the ingenuity practiced in their commission, and had been tried and convicted of the crime of forgery, and imprisoned therefor in one of the state prisons of the state of New York. But there is no *colloquium* to show who Silas Wright was, nor what was his character or standing. It is true that the declaration contains a statement by way of inuendo, that he was formerly governor of the state of New York, but as an inuendo can only be resorted to for the purpose of applying the words to a particular subject matter already introduced into the declaration, and cannot enlarge or extend their mean-

ing; the inuendo, in this case, was misapplied, and must be rejected as surplusage. 1 *Starkie on Slander*, 421; *Van Vechten vs. Hopkins*, 5 *Johns. R.* 220; *Thomas vs. Croswell*, 7 *id.* 271; *Bloss vs. Tobey*, 2 *Pick. R.* 329.

The charge contained in this count, then, is in substance, that the plaintiff had forged sentiments and words for Silas Wright, which he never uttered, and that the plaintiff was as versatile in circumventing the law of right as the famous Monroe Edwards, who was a man of odious character, had committed many frauds and forgeries; had become notorious for them, and for the ingenuity used in their commission, and had been tried and convicted of the crime of forgery, and imprisoned therefor.

A libel has been defined to be a censorious or ridiculous writing, picture or sign, made with a mischievous and malicious intent towards government, magistrates or individuals. *Steele vs. Southwick*, 9 *John. R.* 215.

It has also been defined to be any malicious printed slander, which tends to expose a man to ridicule, contempt or hatred. 5 *Binney R.* 340. It has also been called a malicious publication, expressed either in printing or writing, or by signs and pictures, tending either to blacken the memory of one dead, or the reputation of one who is alive, and expose him to public hatred, contempt and ridicule. 4 *Mass. R.* 168.

Without attempting to give a formal definition of a libel, or to point out the difference between verbal and written slander, it will be sufficient for the purpose of disposing of this case, to apply the well settled principles of the law applicable to cases of this kind. We understand from all the authorities, that a malicious publication which accuses one of a crime, or blackens his character and exposes him to public hatred, contempt and ridicule, is libelous.

To accuse a person of forgery without qualification, would be libelous, because forgery is a crime. But the term "forged" is not used in the case before us in such a manner as to import a crime; it is applied to sentiments and words, and means no more than this, that the plaintiff had stated that Silas Wright had uttered certain sentiments and words, and that this statement of the plaintiff was false; it does not charge that the defendant knew them to be false. This does not, in our opin-

ion, come within any just definition of a libel. It neither charges a crime upon the plaintiff, nor does it blacken his character or expose him to public hatred, contempt or ridicule. It is to be observed, that the alleged libel does not state what the sentiments and words were, but merely that sentiments and words had been forged by the plaintiff for Silas Wright, which he never uttered. All that a person who read the paragraph would learn, would be, that the plaintiff had imputed certain sentiments and words to Silas Wright, which he never uttered, and this, in our opinion, does not amount to a libel.

The other charge contained in this count of the declaration is, we think, clearly libelous. The count contains a colloquium setting out the character of Monroe Edwards to be that of a notorious forger, and the words alleged to be libelous are in substance that the plaintiff was as versatile in circumventing the law of right as Monroe Edwards. It was argued by the counsel for the defendant, that the word "versatile" did not import any breach of morality, and that the paragraph meant no more than that the plaintiff was skillful in circumventing the law of right. This, it was insisted, was not libelous. It may not be libelous to say of one generally, that he is skillful or versatile in circumventing the law of right, but that is not the charge contained in this count of the declaration. The plaintiff is charged with being as versatile in circumventing the law of right, as a person who was a notorious forger, and who had been in prison for the crime of forgery. The character of the plaintiff is held out to the world as that of a forger. To every one who read the paragraph, and who was acquainted with the character of Edwards, that would be the idea communicated. It is needless to say that this charge is libelous. These observations apply to the second count, which sets out the same words.

The third count (after stating that one Lewis Tappan was the proprietor of a certain mercantile agency in the city of New York, for the procurement of information relating to business men and merchants) sets out in substance the following words, "the plaintiff, as we have been credibly informed, was not long since a spy of that noted abolitionist, Lewis Tappan, on the mercantile community of this city. His slanderous reports nearly ruined some of our best merchants." We have no doubt that

these words are libelous. To charge one in a public newspaper with making slanderous reports in regard to the mercantile community, by means of which some of the best merchants of a city were nearly ruined, would, if the charge was believed, excite against the person charged with making the reports, the strongest feelings of hatred and indignation ; and these feelings would not be at all mitigated if the reports were made to the proprietor of a mercantile agency in New York city.

This count, therefore, is clearly good.

The bill of exceptions shows that many exceptions were taken to the rulings of the judge at the trial ; though they were not all insisted on at the argument. The most material of these which remain to be considered, are those which were taken to the instructions which the judge gave to the jury upon the subject of the damages, and in regard to the nature of the alleged libel.

It appears that the judge instructed the jury that they might give any amount of damages up to the amount claimed in the declaration—ten thousand dollars.

Since the decision of this court in the cases of *McWilliams vs. Bragg* (3 *Wis. R.* 429), and *Birchard vs. Booth*, not yet reported, we do not suppose it will be contended that the jury have not the power to give exemplary or punitory damages in cases of this nature; and it is only in cases where the amount of damages awarded by the jury is so great as to show that they were governed by improper motives in fixing the amount, that this court can interfere and set aside the verdict for the reason that the damages are excessive, when the action is one in which exemplary damages can be given. If it should be admitted that the sum at which the judge told the jury they might fix the damages, is so great as to show that the jury would have been governed by wrong motives if they had given a verdict for that sum, and that the judge committed an error, still the verdict shows that the error (if one was committed by the judge) worked no harm to the defendant.

The instructions which the judge gave to the jury in regard to the nature of the alleged libel, remain to be considered.

We are of opinion that he committed an error in instructing the jury, that the words which charged that the plaintiff had

Cramer vs. Noonan.

forged sentiments and words for Silas Wright which he never uttered, were libelous *per se.*

We have before stated, that in our opinion this charge was not libelous. If we are correct in our opinion in regard to it, this part of the charge of the judge is of course erroneous.

It follows, from our view of the law applicable to the case, that the judgment of the court below must be reversed.