MISSOURI PACIFIC RAILWAY COMPANY v. A. F. RICHMOND.

No. 6292.

1. **Practice—Affidavit in Lieu of Cost Bond.**—It is error to dismiss an action although a cost bond may not have been filed within the time prescribed by the statute but tendered before the case was actually dismissed. The affidavit of inability supplies the place of the cost bond.

2. **Libel—Corporation Liable.**—A corporation may become liable in a civil action for both actual and exemplary damages for libel.

3. **Same—Exemplary Damages.**—Exemplary damages may be awarded against a corporation when it is shown that a libel has been published by it with express malice as in other cases of torts done maliciously or wantonly.

4. **Libel—Pleadings.**—It was alleged that defendant published in a pamphlet that plaintiff "A. F. Richmond, a conductor on the I. & G. N., was discharged in July, 1883, for carelessness." Of this publication it was alleged that by its language was meant and intended to charge that plaintiff was careless in his business and employment as conductor. and was so at his discharge. *Held*, that exceptions to the petition that the language was not susceptible of the meaning so charged were properly overruled.

5. **Libel Concerning a Man in His Employment.**—Language which concerns the person in his employment will be actionable if it affects him therein in a manner that may as a necessary consequence, or does as a natural or proximate consequence, prevent him deriving therefrom that pecuniary reward which probably he might otherwise have obtained. Townshend on Libel, 182.

6. **Same.**—The circulation of the pamphlet containing the alleged statements concerning the plaintiff among those entrusted with the duty of employing railroad hands would be injurious, and if the matter was false it would be libelous.

7. **Duty of Railway Company to Avoid Incompetent Employes.**— It appearing that the defendant company was operating 6000 miles of railroad with 24,000 employes, it would be impossible without some system of reporting incompetent men to avoid the danger of re-employing them. It would become the duty of the defendant to the public to avoid such re-employment, and to take proper measures to guard against it.

8. **Reports of Employes.**—In absence of evidence other than that the reports to the central office as to employes were honestly made, and that copies of the pamphlet compiled from the reports were circulated beyond the officers of the defendant company, there could be no recovery save for actual damages even if the matter was false.

9. **Privileged Communications.**—A communication made in good faith in reference to a matter in which the person communicating has an interest, or in which the public has an interest, is privileged if made to another for the purpose of protecting his interest; and a communication made in discharge of a duty and looking to the prevention of wrong towards another or the public, is so privileged when made in good faith.

10. **Malice.**—In such cases malice will not be inferred from the publication, and the existence of it as a fact must be established by other evidence.

11. **Duty to Public—Competency of Railway Employes.**—Looking to the public interests involved in the safe operation of railways, as well as the interests of their owners, it seems that one having reasonable ground to believe that a person seeking important position in that service was incompetent, careless, or otherwise unfit, would be under such obligation to communicate his knowledge to all persons likely to employ such unfit person in that business as would make the publication privileged if made in good faith.

12.   **Pleadings.**—In alleging special damages suffered the petition alleged that the plaintiff had been refused employment by other railway companies, not giving names ·or circumstances.   *Held,* the allegations sufficient on general demurrer.

APPEAL from McLennan.   Tried below before Hon. Eugene Williams. The opinion gives a statement of the case.

*Clark, Dyer & Bolinger,* for appellant. — 1.   After a rule for security for costs has been regularly made and entered on the minutes the cause should be dismissed if the rule be not complied with, and even under the liberal construction placed upon this statute by the courts the filing of a pauper's oath on the sixth day of the next succeeding term of court two days after motion to dismiss had been made is not a compliance with said rule.   Rev. Stats., arts. 1436, 1438; Shackelford, Sampson & Co. v. Wallace, 4 Texas, 240; Cook v. Ross, 46 Texas, 265.

2.   Although a railway corporation may be civilly responsible for the publication of a libel, and although such malice may be implied or imputed to it from its acts in publishing defamatory matter as would warrant a recovery for actual damage, it as a corporate body is not capable ·of bearing actual malice or ill will or of acting wantonly in such manner as to authorize a recovery for exemplary damages, as is attempted by plaintiff in this cause.   Hays v. H. & G. N. R. R. Co., 46 Texas, 273.

3.   Language which is not defamatory of another, though false and malicious, is in no case actionable *per se,* but only upon proof of special ·damage, and the special demurrer of defendant at least to this extent should have been sustained and the plaintiff limited to recovery of such special damage.   Towns. on Sland. and Libel, secs. 197, 345, and notes, pp. 316–17.

4.   It was the duty of the court first to decide, before submitting this cause to the jury, whether the language complained of was capable of bearing the meaning ascribed to it by the innuendoes in plaintiff's petition.   Towns. on Sland. and Libel, secs. 284, 286, and notes.

5.   The language complained of was incapable of bearing any meaning defamatory of or injurious to plaintiff either as an individual or in his alleged capacity as conductor, and the exceptions of defendant to such meaning as is stated and ascribed to such language by allegations and innuendoes in plaintiff's petition should have been sustained by the court.   Towns. on Sland. and Libel, sec. 335; Starkie on Sland. and Libel, 418.

6.   There was no evidence which could warrant a finding of express malice, and a charge submitting this issue was strongly calculated to injure and did injure defendant.   G. H. & S. A. Ry. Co. v. Faber, 63 Texas, 344.

7.   The court should not command the jury to find exemplary dam-

ages, but should leave this to their discretion. Gordon v. Jones, 27 Texas, 620; McGehee v. Shafer, 9 Texas, 20; Cook v. Garza, 9 Texas, 358; Cotton Press Co. v. Bradley, 52 Texas, 588.

8. The court, in violation of the rules and decisions of the Supreme Court to the contrary, suggested to the jury as a limit to their finding for exemplary damage the full amount claimed in plaintiff's petition, to-wit, $20,000, and. actually directed and commanded them if they found certain facts to be true to find any amount as exemplary damages not to exceed said sum of $20,000 as they might consider a proper penalty. G. H. & S. A. Ry. Co. v. Dunlavy, 56 Texas, 259; Glasscock v. Schell, 57 Texas, 224; I. & G. N. Ry. Co. v. Mary Ormond, 62 Texas, 274; Willis & Bro. v. McNeil, 57 Texas, 479.

9. The jury were unable to comprehend or understand the defense offered by appellant that said publication was a privileged communication, on the ground that it was a bona fide statement necessary to be made in the discharge of its duties to the public as a common carrier, etc., because the court in its entire charge failed to state or give any idea what the public or private duties of defendant were, and the charge asked supplied a defect in the charge and its refusal was error which prejudiced the rights of appellant. Hutch. on Car., p. 431, secs. 501, 535; T. M. R. Co. v. Whitmore, 58 Texas, 284; Railroad v. Lockwood, 17' Wall., 357; Railroad Co. v. Darby, 14 Howard, 486.

10. The court erred in allowing plaintiff as his own witness to testify as to various and sundry persons besides those named in his petition to whom he applied for employment and was refused on account of said printed pamphlet, because their names are not set out in the petition. 3 Suth. on Dam., pp. 666-7; Towns. on Sland. and Libel, sec. 345, pp. 594-5, and notes; Tobias v. Harland, 4 Wendell, 537; Starkie on Sland. and Libel, 650; Addison on Torts, sec. 1159; Shipman v. Burrows, 1 Hall, 399; Mayne on Dam., 278, 317; Glasscock v. Schell, 57 Texas, 221.

Truth is complete defense. Towns. on Sland. and Libel, sec. 211, and notes; 4 Wait's Act. and Def., p. 311, and authorities cited; Starkie on Sland. and Libel, pp. 30, 61, 229.

*Anderson Flint & Anderson,* for appellee.— 1. The motion to dismiss was properly refused. Brooks v. Hicks, 20 Texas, 666.

2. While information given properly to employes of railway companies would be privileged, and ordinarily there would be no malice imputed to a corporation by reason of acts of its agents, yet such communications become libelous whenever published in the form of a book for distribution, and the libel in this cause was published as a printed book. and generally distributed by appellant's agent, A. A. Talmage. P. W. & B. Ry. Co. v. Quigley, 21 How., 202, 203.

3. The injury to appellee was one that would affect him for life, de-

prive him of employment in his vocation, and as found by the jury wholly false, and when published in book form as it was always precludes him from procuring employment.

STAYTON, CHIEF JUSTICE.—The nature and result of this action is thus correctly stated in brief of counsel for appellant:

"Appellee sued appellant for three thousand dollars as actual and twenty thousand dollars as exemplary damages, claimed to have resulted to him on account of alleged libelous matter claimed to have been made and published of and concerning appellee by appellant, charging substantially as follows:

"That appellant composed and published a certain discharge list in February, 1884, which was in the form of a printed pamphlet, and which contained among other names the name of appellee, the particular matter complained of in said pamphlet being in substance that 'A. F. Richmond,' a 'conductor' on the 'I. & G. N.,' was 'discharged' in 'July, 1883,' for 'carelessness.' Appellee claiming that said publication was circulated among all railroad men in the country, both in and out of Texas, and that it greatly damaged him in his reputation, and prevented him from ever afterward getting railroad employment or employment of any kind, notwithstanding he made repeated applications for employment; that the matter alleged to have been printed and circulated was false and scandalous, and was composed and published maliciously by appellant.

"Appellant excepted generally and specially to plaintiff's petition, and set forth that the matter was not a libel, for the reason that it was not defamatory of appellee; that the innuendoes set forth by appellee were not justified by the plain import and meaning of the words, and that appellant was a corporation and not capable of bearing malice and not liable for exemplary damages, etc. Appellant also pleaded a general denial, and specially one year's statute of limitation, and that said publication was composed and published by appellant in the proper and necessary course and conduct of its business as a common carrier of freight and passengers; that in the management of its numerous lines and different divisions of its railway traversing several different States it was impossible to properly guard against the re-employment of unworthy men without some such list as the one complained of; that all the information contained in the list was true, and especially the matter stated of and concerning appellee; that he was discharged for gross carelessness in his business as conductor for defendant in July, 1883, and for a total failure to observe or comply with the well known rules and proper regulations of appellant; that the matter published was not false in any particular, but true, and that same was without malice, but done in discharge of a duty defendant owed to the public as well as to itself, by reason of the public nature of its business, and that the publication was absolutely privileged matter.

"Appellee by trial amendment pleaded that the printed matter was composed and published by A. A. Talmage, the fourth vice-president and general manager of defendant, to which plea appellant specially excepted, and then pleaded a general denial.

"The court overruled all of appellant's exceptions and the cause went to the jury, who after hearing all the evidence and charge of the court returned a verdict for appellee for $250 actual damage, $1750 exemplary damage, and judgment was rendered in accordance with the verdict."

On December 16, 1885, appellant caused a rule to be entered requiring appellee to give security for costs, and this not having been done, on the fourth day of the succeeding term a motion to dismiss was filed.

On the second day after this appellee, in accordance with article 1438, Revised Statutes, filed an affidavit of inability to give security for costs, which had been made some days before, and, it seems, placed in the hands of his counsel.

Appellee was not present, and his counsel filed a sworn statement to the effect that the rule had been entered at the former term after the cause had been disposed of for the term and without notice; that it had been agreed between counsel the cause would not be called for trial before the fifth week of the term then pending, which the record shows was observed, and that the affidavit filed had been prepared and placed in the hands of counsel in consequence of a suggestion of the clerk that he would ask security for costs.

The court overruled the motion to dismiss, and this ruling is assigned as error.

The statute is no more stringent now than heretofore, and from the early days of this court it has been held error to dismiss an action although a cost bond may not have been filed within the time prescribed, if tendered before the case was actually dismissed. Cook v. Beasely, 1 Texas, 591; Rhodes v. Phillips, 2 Texas, 162; Hays v. Cage, 2 Texas, 504.

The affidavit supplied the place of a cost bond.

An exception to the petition was overruled which questioned the capacity of a corporation to publish a libel, and denied appellant's responsibility for damages, actual or exemplary, on account of a publication which if made by an individual would be libelous.

Whatever controversy may at one time have existed, it must now be held that a corporation may become civilly responsible for libel. Railroad Co. v. Quigley, 21 How., 202; Howe Machine Co. v. Lowder, 58 Ga., 65; Maynard v. Ins. Co., 34 Cal., 48; Maynard v. Ins. Co., 47 Cal., 207; Boogher v. Life Ass., 75 Mo., 319; Journal Ass. v. McDermot, 44 N. J. L., 431; Aldrich v. Printing Co., 9 Minn., 133; Post Co. v. McArthur, 16 Mich, 447; Hewitt v. Press Co., 23 Minn., 178; Vinas v. Ins. Co., 27 La. Ann., 367; Mora. on Corp., 727; Towns. on Sland. and Libel, 265; Cool. on Torts, 136.

The rule now recognized is that corporations like individuals may become liable for damages exemplary in character, and the main controversy has been as to whether they become so liable when the wrong committed is such as would authorize the imposition of such damages on the guilty agent, or whether it must be shown that the managing agents of the company directed the wrongful act or subsequently ratified it.

That exemplary damages may be awarded when it is shown that a libel has been published with express malice, as in other classes of torts done maliciously or wantonly, is well settled.    Post Co. v. McArthur, 16 Mich., 447; Hewitt v. Press Co., 23 Minn., 180; Hunt v. Bennett, 19 N. Y., 173; Gilnath v. Allen, 10 Ire., 69; Cramer v. Noonan, 4 Wis., 231; Hosley v. Benks, 20 Ill., 116; Snyder v. Fulton, 34 Md., 128; Towns. on Libel, 506, 538.

The petition alleged that by the language used appellant meant and intended to charge that appellee was careless in his business and employment as conductor, and that he was so careless and unworthy of employment at the date of publication, and it is claimed that the language was not susceptible of the meaning attached to it, and that in so far an exception to the petition should have been sustained.

It seems to us that such was the natural import of the language alleged to have been used, and that the ruling of the court in this respect was correct.

Appellee alleged that his employment was that of conductor in the railway service, and that in this and in all lower grades of that service by long experience he had become proficient, capable, and skillful, and that by reason of the publication complained of he had since been unable to obtain employment, whereby he was damaged.

It is claimed, in view of these facts, that the publication was not libelous and that an exception presenting this question should have been sustained.

The occupation alleged was one lawful in character, and we understand that "language which concerns the person in such employment will be actionable if it affects him therein in a manner that may as a necessary consequence, or does as a natural or proximate consequence, prevent him deriving therefrom that pecuniary reward which probably he might otherwise have obtained," is actionable.    Towns. on Libel, 182.

If, as alleged in the petition, the pamphlet containing the language complained of was by appellant placed in the hands of those charged with the duty of employing conductors on the different lines of railway through the country, it seems to us that the effect of this would be to prevent his obtaining employment in that business for which he alleges he had fitted himself by many years service, and if the charge was untrue and published with actual malice, as alleged, it was libelous.

There is a conflict in the evidence as to whether the language of which appellee complains was true.

On his part there is much evidence tending to show that he was a careful and skillful conductor, but on the other hand there is much evidence showing specific and repeated acts of carelessness and disregard of duty.

The evidence, however, does show that such reports were made by those persons whose immediate duty it was to supervise the appellee, to the officers of the company who caused the pamphlet to be printed as would not only have justified the publication to be made but as would have required it to be made, or in some manner the same facts to have been made known to all persons whose duty it was to make employments for appellant.

It was shown that appellant was operating about 6000 miles of railway and had in its employment about 24,000 employes, and without some such source of information it was impossible to prevent the re-employment of an employe on one part of the line when discharged from another for cause, which made it the duty of appellant to its employes, the public, and itself not again to receive the discharged person into its service.

There is no evidence tending to show that the persons who gave information on which the publication was made were not worthy of credit, or that they acted through any other motive than a desire to guard those whose duty it was to employ from employing persons unfit for employment in railway service; nor is there evidence showing that the pamphlet containing the language complained of was ever placed by the officers of appellant company in the hands of any person other than its own employes, to whom it was proper to give information necessary to guide them in the selection of persons to serve the company. This it was the right of the appellant to do, and while it might be liable for actual damages for so doing if the publication was false, it is certainly true that no inference of the existence of actual malice could be drawn from the facts shown by the record before us. There can be no pretense that the officer of the company who caused the pamphlet to be published was actuated by ill will toward or desire to injure appellee, who was a stranger to him. The evidence of that officer, uncontradicted, was in substance that he had the pamphlet published; that it was not issued with any bad feeling or malice toward plaintiff or for the purpose of injuring him or any one else; that the book was gotten up for the personal convenience and private information of the officers of the company only, in order that they might protect the lives and property of the public and also the interests of the defendant by securing to the company only good, careful, and reliable men. That he did not know plaintiff; that there were about 24,000 persons in the employ of defendant at the time the pamphlet was printed; that it was necessary to have this discharge list in order to guard against re-employing men who had proved themselves incompetent or un-

trustworthy; that he printed about 100 copies of the book and sent them to officers of the company only, and if one ever got outside of keeping of proper officers it must have been surreptitiously obtained.

We understand the law to be that a communication made in good faith in reference to a matter in which the person communicating has an interest or in which the public has an interest is privileged if made to another for the purpose of protecting that interest, and that a communication made in the discharge of a duty and looking to the prevention of wrong towards another or the public is so privileged when made in good faith. In such cases, although the statements made may have been untrue, malice can not be implied from the fact of publication and to sustain an action in which the existence of evil motive must be proved.

In the case of Harrison v. Burk (5 El. & Bl., 348), it was said: "A communication made bona fide upon any subject matter in which the party communicating has an interest or in reference to which he has a duty is privileged if made to a person having a corresponding interest or duty, although it contained criminatory matter which without this privilege would be slanderous and actionable. * * * 'Duty,' in the preferred canon, can not be confined to legal duties which may be enforced by indictment, action, or mandamus, but must include moral and social duties of imperfect obligation."

"When words imputing misconduct to another are spoken by one having a duty to perform, and the words are spoken in good faith and in the belief that it comes within the discharge of that duty, or where they are spoken in good faith to those who have an interest in the communication and a right to know and act upon the facts stated, no presumption of malice arises from the speaking of the words, and therefore no action can be maintained in such cases without proof of express malice. If the occasion is used merely as a means of enabling the party to utter the slander to indulge his malice, and not in good faith to perform a duty or make a communication useful and beneficial to others, the occasion will furnish no excuse." Bradley v. Heath, 12 Pick., 164; Noonan v. Orton, 32 Wis., 112; Harper v. Harper, 10 Bush., 455; Harwood v. Keech, 4 Hun, 390; Towns. on Libel and Slan., 241–245.

This action is based on the proposition that the publication was made by a representative of the appellant corporation in the course of his employment or in the discharge of the duties of his office, and that for this reason appellant, corporation though it is, is in law the maker and publisher of the libel.

In the discharge of the duties imposed upon that officer it was his duty to appellant and to the public alike to see that none but competent and careful men were employed to conduct its business, which when conducted with the utmost care is always attended with great danger. This duty he could not discharge in person throughout all the lines operated

by appellant, and it became necessary that persons on different parts of the line should be clothed with power to employ servants. The officer having been informed. by a credible person or persons that appellee was. not a careful man, that he had been careless in the discharge of his duties as a conductor to such extent as to make his discharge necessary, it became his duty to place this information in the possession of all persons having power to employ, and a failure to do so would have been a. breach of duty. A publication so made is not actionable in the absence of actual malice, and as there was no evidence of this, the court below should not have submitted a charge under which the jury could have found in. favor of appellee any exemplary damages.

We are further of the opinion that the court should have granted a, new trial on the ground that there was no evidence sufficient to show express malice, for in the absence of this the language complained of,. under the circumstances of the publication, was not actionable and appellee therefore not entitled to damages, either actual or exemplary.

If, as claimed by appellee, the publication had been placed in the hands. of the agents of other railway companies, without malice but for the sole purpose of enabling such agents to avoid the employment of unsuitable. persons, whether so communicated by request or not, looking to the public interests involved, we do not see that such a publication would be actionable.

It seems to us that any person who upon reasonable grounds believes. himself to be possessed of knowledge which, if true, does or may affect the rights and interests of another, has the right in *good faith* to communicate such belief to that other, and he may make the communication. with or without request, and whether he has or has not personally any interest in the subject matter of the communication.

Mr. Townshend states even a broader rule, which does not require that, reasonable or probable cause for the belief should exist. Towns. on Libel and Slan., 241.

The rule is illustrated by this author in the cases cited by him to sustain the proposition that a former employer may without rendering himself liable in any action for libel in good faith state, with or without previous request, what he may believe to be true of one formerly in his employment.

Looking to the public interests involved in the safe operation of railways, as well as the interests of their owners, it seems to us that one having reasonable ground to believe that a person seeking important position in that service was incompetent, careless, or otherwise unfit would be: under such obligation to communicate his knowledge or belief to all persons likely to employ such unsuitable person in that business as would make the publication privileged if made in good faith.

Appellee alleged that he sought employment from many railway com-

panies, and that he had been refused employment on account of the publication of which he complains, but he did not allege the names of the persons to whom he had made application, and for the want of such averments his evidence on this point was objected to.

We are of opinion that the averments of special damages were sufficient on general demurrer, and that if appellant desired more specific averments as to the persons who had refused employment to appellee it should have called for this by pointing out the specific defect by proper exception.

For the errors noticed the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered April 26, 1889.