### EMERSON, TALCOTT & CO. v. T. F. SKIDMORE.

#### No. 636.

1. **Practice—Damages for Wrongful Attachment—Exemplary Damages.—** Suit for damages against principal and sureties on attachment bond for wrongfully and maliciously suing out the attachment; actual and exemplary damages were claimed. No exception raised the question of the liability of the sureties for only actual damages; nor was such distinction made in the charge. The verdict found separately the actual and the exemplary damages. The court rendered judgment for exemplary damages against the principal alone. *Held*, that the judgment is the legitimate and only legal result that can be derived from the facts. The sureties could not be made liable.

2. **Corporation Acting by Its Agents May Be Liable for Exemplary Damages.—** Action for damages, actual and exemplary, against a corporation and its sureties on attachment bond. The petition charged that the attachment was maliciously sued out and caused to be levied, etc., and that the corporation in so doing acted through its agents, but alleging that the malicious acts were those of the corporation. These allegations were sufficient to admit proof of facts showing the liability of the corporation for exemplary damages.

3. **Corporation—General Agent.—** See facts held sufficient to show that an agent was more than a mere servant of the corporation, as he represented it in its corporate capacity in the matters involved. It was proper to submit the issue of exemplary damages upon evidence tending to show malice, etc., on part of such agent in the matter of the attachment.

4. **Legal Rate of Interest—Charge.—** At the time the goods were seized the legal rate of interest was 8 per cent; before the trial the rate was reduced to 6 per cent. It was not error in the charge in stating that the measure of damages for goods wrongfully taken was their value, and 8 per cent interest. See facts.

APPEAL from McLennan. Tried below before Hon. L. W. GOODRICH.

*Brown, Hall & Freeman,* and *Jones, Kendall & Sleeper,* for appellants.

1. The sureties upon an attachment bond are liable only for actual damages, unless it be alleged and proven that in executing the bond they were actuated by malice and a wanton desire to injure the defendant. Tynburg v. Cohen, 67 Texas, 220; Kaufman & Runge v. Wicks, 62 Texas, 234; Wallace v. Finburg, 46 Texas, 35.

2. A corporation can act only through agents. When a suit is brought by a corporation on a debt, and through an agent a writ of attachment is issued and levied in the suit, and the defendant in attachment sues for exemplary damages and traverses the affidavit for attach-

ment, in order to hold the corporation liable it must be alleged and proven that the corporation ratified the act of its agent in making the affidavit for attachment, or did some act that would render it liable for exemplary damages. Railway v. Garcia, 70 Texas, 207; Hays v. Railway, 46 Texas, 272; Wallace v. Finburg, 46 Texas, 35; Heidenheimer v. Sides, 67 Texas, 32.

The verdict of the jury reads: "We the jury find for the plaintiff an amount sufficient to offset defendant's judgments; also find for the plaintiff exemplary damages to the amount of $1500."

Upon this verdict the court rendered judgment against Emerson, Talcott & Co. for $1500, and against Emerson, Talcott & Co., N. A. McMillen, and John M. Wendelkin, for all costs of suit. Longscope v. Bruce, 44 Texas, 434; Claiborne v. Tanner, 18 Texas, 68; Akin v. Jefferson, 65 Texas, 135; Campbell v. Everts, 47 Texas, 102.

3. The measure of damages for seizure of goods under a writ if wrongfully sued out, is the value of the goods at the time and place of seizure, with legal interest from the date of seizure to the date of trial. Acts 22nd Leg., p. 87; Willis v. Lowry, 66 Texas, 540.

*Alexander & Campbell*, for appellee.—1. The jury simply found a verdict in favor of the plaintiff, Skidmore, for $1500 exemplary damages. The verdict does not state against whom it is rendered. Judgment was rendered simply against the principals on the attachment bond, Emerson, Talcott & Co., for $1500, and against the sureties, Wendelkin and McMillan, for costs only, so that appellants are in no position to complain. Brandt on Surety., sec. 27; Thomae v. Zushlag, 25 Texas Supp., 225; Underwood v. Parrott, 2 Texas, 168; 5 Am. and Eng. Encyc. of Law, p. 62.

2. The allegation of the petition is, that the corporation maliciously sued out the attachment without probable cause. The acts complained of are charged directly against the corporation.

3. As to rate of interest to be computed upon value as measure of actual damage: Railway v. Jackson, 62 Texas, 209; Hagood v. Aiken, 57 Texas, 511; 11 Am. and Eng. Encyc. of Law, p. 413.

COLLARD, ASSOCIATE JUSTICE.—We adopt the appellants' statement of the nature and result of the suit, which is as follows:

This action was brought by appellee, T. F. Skidmore, against appellants, Emerson, Talcott & Co., a corporation doing business in Texas and chartered under the laws of Illinois, J. M. Wendelkin, and N. A. McMillan, for damages claimed by him growing out of the levy of a writ of attachment upon certain merchandise of the alleged value of $2000 belonging to the plaintiff, in the town of McGregor, in McLennan County, on the 4th day of November, 1889. He alleged in his petition that the attachment was sued out by Emerson, Talcott & Co.

against himself and one T. C. S. Hatch, in Dallas County, and that defendants Wendelkin and McMillan were sureties for Emerson, Talcott & Co. on its attachment bond, and that the attachment was sued out wrongfully, maliciously, and without probable cause, and that the plaintiff, Skidmore, was damaged thereby $10,000, for which he prayed judgment, etc.

Defendants answered by general demurrer, special exception, general denial, and specially answered, that on the 9th day of June, 1890, the defendants Emerson, Talcott & Co., in the District Court of Dallas County, in the same cause wherein the writ of attachment was sued out, recovered a judgment against plaintiff, T. F. Skidmore, and one T. C. S. Hatch, for the sum of $2140, with interest at 10 per cent per annum from date and costs of suit, and that said judgment was still unsatisfied, and a valid and subsisting judgment against said Skidmore in favor of said Emerson, Talcott & Co.

Plaintiff replied, by supplemental petition, that the said judgment had been fully paid off and satisfied by the proceeds of collection of certain notes delivered by plaintiff to Emerson, Talcott & Co., as collateral security for the debt upon which said judgment was obtained, amounting to $1200, and by the sale of the goods attached in the suit in which said judgment was rendered.

Defendants answered this supplemental petition by demurrer, general denial, and admission that Emerson, Talcott & Co. had collected $797.50 on notes held as collateral security for the notes of Skidmore & Hatch, since the said judgment was rendered, and by garnishment proceedings against the First National Bank of McGregor and W. P. Gaines, and that it had paid costs of suit, amounting to $113.

The cause was tried before the court and a jury. On the 19th of October, 1891, the jury returned the following verdict: "We the jury find for plaintiff an amount sufficient to offset defendant's judgment; also find for plaintiff exemplary damages to the amount of $1500. E. B. Levy, Foreman." Upon which verdict the court rendered a judgment against Emerson, Talcott & Co. alone, for the sum of $1500, and against all the defendants for costs of suit. Defendants moved the court for a new trial, which was overruled, to which ruling defendants excepted and gave notice of appeal.

*Opinion.*—The court instructed the jury as to the law upon which exemplary damages would be allowed plaintiff. Appellants say that no charge should have been given upon the subject, because the suit is upon an attachment bond in which Emerson, Talcott & Co. are principals, and there is no pleading or evidence in the case to sustain a claim for such damages against Wendelkin and McMillan, sureties on the bond, and the court did not limit the finding of such damages against the principals in the bond.

The petition sets up facts authorizing a recovery on the bond for the wrongful suing out of the writ, and, in addition, the fact that it was maliciously sued out by defendants, and prays for actual and exemplary damages. If the exception to the petition was intended to call for a ruling on the point now made, it was not insisted on in the court below. There was no such ruling. The verdict separated the damages, actual and exemplary, and the judgment of the court, following and enforcing the law, was rendered only against the principals—Emerson, Talcott & Co.—for exemplary damages. The judgment corrects omission in the charge. The sureties on the bond can not complain.

Appellants assign as error the rendering of the judgment for exemplary damages against Emerson, Talcott & Co. alone, because the petition asks such damages against all the defendants, and the verdict is general—thus making a variance between the verdict and judgment.

The assignment is not well taken. The judgment is the legitimate and only legal result that can be derived from the facts. The law should be rationally applied to them as alleged and proved. Defendants could have compelled more definite averments as to sole liability of the principals for exemplary damages, by a special demurrer insisted on before the court. This was not done. The sureties could not be made liable for such damages under any kind of mere averment. The suit, construed by the law, is a suit on the bond against principals and sureties for actual damages, and against the principals for exemplary damages. The court, as before stated, controlled the matter in the judgment, as it should have done. It would have been patent and reversible error to have rendered judgment against the sureties for the exemplary damages. Such damages could only be against the principals on the bond. We can not say the judgment should have been rendered for exemplary damages against the sureties upon the ground that the verdict was general, and then reverse the judgment because the sureties could not be made so liable. The verdict discriminates between and finds separately the actual and exemplary damages, making the duty of the court clear in rendering judgment.

Appellants say that the court below should not have submitted the issue of exemplary damages at all, because the petition shows that defendant Emerson, Talcott & Co. is a corporation, and that the affidavit for attachment was made by an agent of the corporation, and there is no allegation of ratification or other act of the corporation that would authorize a judgment for exemplary damages.

The petition, in effect, charges that the attachment was maliciously sued out and caused to be levied upon plaintiff's property by the plaintiff in the attachment suit. It alleges that the corporation, in so

doing, acted through its agents, but it alleges that the malicious acts were those of the corporation.

This was sufficient to admit proof of facts showing the company's liability for exemplary damages, and authorized the charge upon that subject, if the facts warranted the submission of the issue.

There is no assignment of error as to the sufficiency of the evidence to warrant the charge. But we think the facts were sufficient.

The defendant is a foreign corporation, organized under the laws of Illinois.

One E. S. Thorpe testified: "I am the agent of defendants, Emerson, Talcott & Co., and the person who made the affidavit for attachment in the case of Emerson, Talcott & Co. v. Skidmore & Hatch, the suit on the two notes—one for $1400 and the other for $1000—filed in the District Court of Dallas County on November 2, 1889. I made said attachment under the directions and instructions of the witness, J. M. Wendelkin, who is now, and was at the time the writ of attachment was sued out, and for a long time prior thereto, the general manager and general agent of the defendants Emerson, Talcott & Co., which is a foreign corporation, organized under the laws of Illinois, doing business in the State of Texas, with headquarters at Dallas. That said witness as general manager—the said Wendelkin—employs all the agents and other employes doing business for defendants Emerson, Talcott & Co. in Texas, and attorneys and other persons doing business for said corporation. That when I had made said affidavit, I had never seen either Skidmore or Hatch. I was not acquainted with either one of them, had never seen the stock of goods, had never been to the town of McGregor, and I had heard nothing concerning their disposition or contemplated disposition of their property. I just simply made the attachment because Mr. Wendelkin told me to do it, and because we supposed that Skidmore was not remitting the money according to the terms of the contract. That after I had made the attachment and we had given bond, filed the suit, and the writ of attachment was sued out, it was turned over to me, with instructions to go down to McGregor and look around and see what I could see and hear what I could hear. In compliance with my instructions, I went to McGregor and heard some rumors about Skidmore having previously mortgaged some of his buggies to the First National Bank to secure a debt due by him to the bank, and that Skidmore was selling the buggies at the same time, and heard something about Skidmore's selling some cotton to one Andrews. I do not remember who the persons were that told me about that, and could not now recall their names or identify them if they were shown me. I looked around the town, but saw nothing indicating that the parties were about to do anything unusual or dispose of their property in any manner. After getting what information I could in regard to the matter, I went

back to Dallas and told Wendelkin what I had heard, and he then instructed me to return to McGregor and levy the writ of attachment, which I did, in accordance with his instructions. The affidavit was made partly on the rumors that I had heard when I went to McGregor, but mainly on the fact that we believed that Skidmore was not coming up to his contract."

The ground of the attachment stated in the affidavit was, that Skidmore was about to dispose of his property with intent to defraud his creditors.

The evidence adduced upon the trial shows that the grounds stated for the attachment did not exist, and that there was no reason to suppose the fact existed. Skidmore had mortgaged two or three buggies of his own—not of the purchase from Emerson, Talcott & Co.—to the bank to secure a small indebtedness he owed the bank, which buggies were separated from the rest of his stock and placed in another house, and not exposed for sale; but when the attachment was run the mortgage had long since been paid off and discharged, and the buggies returned to plaintiff's place of business. The evidence shows, that plaintiff was selling only in the usual course of trade, and very little, if any, in that way, there being but little call for his goods. The evidence supports the finding that the acts complained of were directed by the company as to the wrongful and malicious suing out of the writ, and the want of probable cause.

We are of the opinion that the manager, possessing the powers stated, was more than a mere servant or agent of the company. He represented it in its corporate capacity in the matters involved. We do not think it was error to instruct the jury upon the issue of exemplary damages. Tel. Co. v. Brown, 58 Texas, 174; Railway v. Richmond, 73 Texas, 568; Kaufman & Runge v. Wicks, 62 Texas, 234; Railway v. Garcia, 70 Texas, 207; Cool. on Torts, 136, 141.

The court instructed the jury as to actual damages, in case they should find that the writ was wrongfully sued out, that the measure of damages would be the value of the goods at the time and place of seizure, and 8 per cent interest per annum from the time of seizure to July 13, 1891, and 6 per cent from then to the time of trial.

Appellants say this was error, because the rate of legal interest at the time of trial was 6 per cent.

The legal rate of interest was as stated in the charge. The fact that it was 6 per cent at the time of trial would not control for the whole time. It would be 8 per cent up to the time the statute changing it to 6 per cent took effect. Acts 22nd Leg., p. 87.

The testimony sustains the verdict upon the issue of actual damages, that the value of the goods was sufficient to offset the unpaid balance of defendants' debt as shown by their judgment. The testimony is conflicting, but is not insufficient to support the verdict. The

court below approved the verdict, and it is not so clearly wrong as to authorize an appellate court to set it aside and reverse the approval of the trial judge.

We can not say that the court erred in overruling the motion for a new trial upon this ground, nor upon the ground that plaintiff's testimony failed to show want of probable cause in suing out the writ of attachment.

There is no error in the judgment of the court below, and it is affirmed.

*Affirmed.*

Delivered March 14, 1894.