J. W. Myers Commission Company v. Cox.

4-5349                                              125 S. W. 2d 475

Opinion delivered February 20, 1939.

*D. H. Howell,* for appellant.

*Batchelor & Batchelor* and *E. D. Chastain,* for appellee.

Griffin Smith, C. J. J. W. Myers Commission Company shipped from Van Buren, Arkansas, to appellee,

Grace Cox, at Waterloo, Iowa, a mixed car of cabbage and beans, billed at $460. Mrs. Cox protested that as to the cabbage, quality was deficient, and she declined to pay the agreed price of $1 per hundred pounds. When the bill of lading was not honored, the railroad company sold the shipment for $136 and applied proceeds as credit on freight charges of $225. An advance payment of $50 had been made to appellant in June, 1937, at the time the contract of purchase and sale was consummated.

December 28, 1937, the commission company filed suit in Crawford circuit court. Service was had by attaching a truck and 100 sacks of potatoes then in possession of Walter Williams. Williams intervened, claiming the potatoes. He asked damage compensation of $150. There was an agreement February 12, 1938, that the truck belonged to R. & S. Motor Sales Company. It was released. March 5 Mrs. Cox filed an answer and cross-complaint, alleging damages of $150 for breach of the sales contract, $800 for wrongful attachment, and asked that the initial payment of $50 be refunded.

March 25, 1938, the commission company amended its complaint by alleging that Mrs. Cox and Williams were partners. The following day Mrs. Cox and Williams were awarded judgments for $75 and $110, respectively, in consequence of jury verdicts. The commission company has appealed.

In its motion for a new trial appellant alleges: (1) That the court erred in permitting Mrs. Cox to testify that "the reasonable usable value of the truck was $10 per day for 36 days." (2) That error was committed in permitting Mrs. Cox to testify that she lost six days of time and was compelled to spend $10 in coming to Van Buren to attend trial. (3) That the court erred in giving certain instructions. (4) That it was error to permit Mrs. Cox to testify that she lost three days' time, with her truck, valued at $10 per day, at Waterloo, Iowa, on account of appellant's action in shipping the below-quality produce. (5) That the court erred in permitting Mrs. Cox to testify that "if the car of cabbage and beans had arrived at Waterloo, Ia., in good condition and of

No. 1 grade as per sales contract [with the plaintiff], she could have sold the same for a profit of $200."

June 7 appellant wired Mrs. Cox at Waterloo that shipment had been made the previous day. Mrs. Cox telegraphed on the 8th, complaining of quality and condition. She closed her telegram by offering to "accept at seventy-five cwt," and requested answer by Western Union immediately. Appellant replied on the 8th, saying the shipment had been loaded under government supervision, and added: "If you will not accept 'as is,' we will call on department of agriculture to investigate." On the 9th Mrs. Cox replied: "Cabbage terrible. Cannot accept. Go ahead with investigation. Reply Western Union." On the 9th appellant wired: "Reducing draft to confirm your wire yesterday seventy-five cents hundred." A telegram from Mrs. Cox to appellant dated the 9th reads: "Cabbage deteriorating fast. Only inspector here WWIB. Get your inspector; I am through."

Filing time of the telegrams—that is, the hour of day—is not shown. On cross-examination Mrs. Cox testified that after making an inspection she wired the commission company offering to accept the cabbage at seventy-five cents per hundred pounds. The transcript shows: [Mrs. Cox] "admitted that she received a wire from the plaintiff on June 9, agreeing to reduce the draft to 75 cents per cwt, but by that time [I] had made up [my] mind not to have anything further to do with it, and refused to handle beans or cabbage at any price."

*First.* The appellee, Cox, failed to show that appellant's telegram consenting to a reduction in price was not received while her offer was outstanding; nor did she show that appellant's acceptance, which she requested by telegraph, was not sent within a reasonable time. Her offer to waive alleged deficiencies in quality, and deterioration, was transmitted June 8. It is true appellant's first message was not an acceptance, but it did contain a proposal to have the department of agriculture make an investigation. Mrs. Cox sent another message on the 8th (presumably later in the day), making a seventy-five cents per hundred offer. On the 9th the offer was accepted. Mrs. Cox' telegram of the 9th is not free from

ambiguity. She said: "Only inspector here WWIP. Get your inspector; I am through." Whether she meant to say her offer of seventy-five cents was withdrawn, or whether the expression "I am through" had reference to procurement by her of an inspector, there is some doubt.

In view of the relationship of the parties and the advantage Mrs. Cox had in being where she could personally inspect the shipment, we conclude that even if she intended her telegram of the 9th to be a withdrawal of the seventy-five cent offer, it was ineffective because of appellant's reasonable promptness in wiring an acceptance. At the time Mrs. Cox made her offer, the freight charges had accrued, and she knew or should have known what they were. The shipment was made f. o. b. Van Buren, and any deterioration occurring during transit would constitute a claim to be pressed by Mrs. Cox.

Since construction of the contract (which is a question of law) determines liability or non-liability of Mrs. Cox, we conclude that the court erred in submitting this question to the jury. The judgment for $75 in favor of Mrs. Cox is reversed. Testimony of appellant that the balance due was $285, after allowing for initial payment of $50, credit of approximately $136 on freight as a consequence of distress sale of the produce, etc., is not contradicted. Therefore, judgment is given here for $285 against Mrs. Cox and in favor of appellant.

*Second.* There was substantial evidence from which the jury could find that Williams, in purchasing the potatoes, acted in his own behalf. While it is improbable that this is true, nevertheless we cannot say that such finding was not supported by the quantum of testimony essential to a determination of that question.[1]

[1] Mrs. Cox was in Van Buren the night the potatoes and truck were attached. She had been in company with Williams and two other men. Williams testified that when they got to the garage after the writ of attachment had been served, Mrs. Cox claimed the potatoes. He also testified that he had been in the Imperial Valley [of California] where he bought tomatoes and other perishable commodities. He admitted that Mrs. Cox brought such produce to Joplin in her truck, where he (Williams) sold it, and "with the money [I] obtained therefor, and with some money that [I] had saved, [I] bought the potatoes in question from M. L. Miller, and paid for them with

Because of the perishable nature of the potatoes, appellant petitioned the court for authority to sell them. The record does not show what action the court took with reference to the petition, but the attached property was delivered to appellant, and it is presumed the potatoes were disposed of in due course.

Instruction No. 3, given at the request of Williams, was erroneous, and prejudicial.[2] If Williams owned the potatoes, the only damages recoverable by him was the market value, there being no evidence that they were purchased for a special purpose known to the appellant. The first sentence of the instruction is correct, but it was improper to add, "Also he is entitled to such damages as he has sustained because of such attachment." The only evidence tending to show additional damages was Williams' testimony that he was compelled to make several trips to Van Buren, and that he had lost lots of time.

In *Goodbar et al.* v. *Lindsley,* 51 Ark. 380, 11 S. W. 577, 14 Am. St. Rep. 54, this court said: "Expenses incurred by a defendant in attachment in prosecuting his own suit for damages must be borne by himself, the same as expenses are borne by others who become actors in the court to right their wrongs."

If Williams owned the potatoes (and the jury found that he did), it was incumbent upon him, in alleging damages additional to the market price of the potatoes, to show what these damages were. By adding to the instruction the word "also," and the sentence of which it was a part, the jury was permitted to speculate as to matters not established by proof. Because of this error the judgment in favor of Williams is reversed, and the cause is remanded for a new trial.

[my] own money. Grace Cox had nothing to do with the purchase or paying for the potatoes, [and] had no interest in them whatever."

[2] Instruction No. 3 reads as follows: "If you find for the intervener, then you should find the market value of the potatoes when attached and your verdict should reflect that sum in favor of the intervener. Also he is entitled to such damages as he has sustained because of such attachment, if it was wrongfully sued out, and his property so taken, if any."