**V.E. Joahanne THOMAS–SMITH, Appellant,**

v.

**James E. MACKIN, Appellee.**

**No. 14–05–00852–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 27, 2007.

Rehearing Overruled Nov. 8, 2007.

Hao Le, Austin, TX, for appellant.

Mark G. Lazarz, Houston, TX, for appellee.

Panel consists of Justices FOWLER, FROST, and EDELMAN.*

## OPINION

RICHARD H. EDELMAN, Senior Justice.

In this defamation case, V.E. Joahanne Thomas–Smith appeals on numerous grounds a judgment entered in favor of James E. Mackin. We reverse and remand.

### Background

During a telephone conversation, Thomas–Smith, the Provost and Senior Vice President of Academic and Student Affairs of Prairie View A & M University ("Prairie View"), questioned Dr. Gerard Rambally, the Dean of Arts and Science of Prairie View, about Rambally's reasons for recommending Mackin, a Ph.D. in chemical oceanography, to be appointed interim Chairman of the Prairie View Chemistry Department and about not having assigned Mackin a full teaching load for the upcoming semester. One of Thomas–Smith's questions or comments in this conversation was to the effect that Mackin and Rambally had a "love" or "lover" relationship. After Mackin, a married man, learned of this comment (the "comment"), he filed this action for slander against Thomas–Smith. The case was tried to a jury, and judgment was entered in accordance with the jury's verdict, awarding Mackin $40,000 in damages against Thomas–Smith.

* Senior Justice Richard H. Edelman sitting by assignment.

## Directed Verdict

█ Thomas–Smith's first issue contends that the trial court erred by denying her motion for directed verdict[1] on the ground that the comment was not defamatory as a matter of law because it was a rhetorical hyperbole rather than a statement of fact.[2]

█ Slander is a defamatory statement[3] that is orally communicated to a third person without legal excuse. *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995). Among other things, a defamatory statement must be sufficiently factual to be susceptible of being proved objectively true or false, as contrasted from a purely subjective assertion. *See Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 21–22, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). It must also be such that a reasonable factfinder could conclude that the statement implies an actual assertion of the purported fact, as contrasted from loose, figurative, or hyperbolic language that would negate the impression that the declarant was seriously maintaining that the fact was literally true. *See id.*[4]

█ An allegedly defamatory publication is construed as a whole in light of the surrounding circumstances based on how a person of ordinary intelligence would perceive it. *New Times, Inc. v. Isaacks,* 146 S.W.3d 144, 154 (Tex.2004). The appropriate inquiry is thus objective, not subjective. *Id.* at 157. Whether a statement is capable of a defamatory meaning is generally a question of law for the court. *Id.* at 155. But when a publication is of ambiguous or doubtful import, the jury must determine its meaning. *Id.*

█ In this case, by describing a relationship between individuals, the comment was sufficiently factual to be susceptible of being proved true or false. However, it is not clear from the context and surrounding circumstances whether Thomas–Smith was making the comment: (1) sarcastically, to figuratively express her disbelief concerning the recommendation; or (2) sincerely, out of concern that the recommendation had been made for improper motives. Because of this ambiguity, Thomas–Smith's first issue fails to demonstrate that the comment was not defamatory as a matter of law, and is overruled.

█ Thomas–Smith's second issue contends the evidence conclusively proves there was no publication because the parties who heard the comment did not understand it to be defamatory. A person publishes a slanderous remark if she communicates it to a third person who is capable of understanding its defamatory meaning and in such a way that the person did understand its defamatory meaning. *Lozano v. Lozano,* 983 S.W.2d 787, 793 (Tex.

---

1. A directed verdict is proper if no evidence of probative force raises a fact question on an issue that is essential to the plaintiff's right of recovery. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000).

2. Although Thomas–Smith's motion for directed verdict, made in open court, asserted that the comment was not defamatory, it gave no reason for that assertion. However, because we conclude that the reason presented on appeal is without merit, need not rule on whether the complaint was preserved.

3. A defamatory statement is one that is injurious to reputation, whether true or false. *See Bentley v. Bunton,* 94 S.W.3d 561, 587 (Tex. 2002).

4. *See generally* Eric Scott Fulcher, Note, *Rhetorical Hyperbole and the Reasonable Person Standard: Drawing the Line Between Figurative Expression and Factual Defamation,* 38 Ga. L.Rev. 717, 720 (2004).

App.-Houston [14th Dist.] 1998), *aff'd in part, rev'd in part on other grounds,* 52 S.W.3d 141 (Tex.2001).

■ The undisputed evidence in this case shows that two people heard and understood the comment. One was Rambally, who understood it to assert that Mackin had a sexual or romantic relationship with him and that he (Rambally) was appointing people to positions based on his relationship with them rather than their credentials. The second person was Darlene Knebel, Rambally's secretary, who understood it to assert that Rambally was recommending Mackin to be Chemistry Department Head because of Rambally's " 'love relationship' " with Mackin. Because there was evidence of publication, Thomas–Smith's second issue fails to demonstrate that the trial court erred in denying the motion for directed verdict on this ground, and is overruled.

### Jury Charge

Thomas–Smith's fifth issue contends, in part, that the trial court erred by refusing her requests to include in the court's charge to the jury questions on the defenses of official immunity and qualified privilege.

■ A trial court must submit the questions, instructions, and definitions that are raised by the pleadings and evidence. TEX.R. CIV. P. 278. A judgment cannot be permitted to stand when a trial court's refusal to submit a question denies a party the submission of a viable affirmative defense that has been so raised. *Exxon Corp. v. Perez,* 842 S.W.2d 629, 631 (Tex. 1992).

■ One of the elements of the defense of official immunity is good faith, which requires an objective determination of whether a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 162, 164 (Tex.2004). As evidence of the element of good faith to support the submission of a jury question on official immunity, Thomas–Smith relies on the testimony of George C. Wright, President of Prairie View, and Thomas–Smith.

■ However, the testimony of Wright that Thomas–Smith's brief cites for this purpose is deposition testimony that was attached as an exhibit to Thomas–Smith's motion for summary judgment. Because Thomas–Smith's brief cites no portion of the record where any such testimony by Wright was admitted into evidence at trial, it does not establish that this evidence was before the jury so as to support a question in the court's charge. Similarly, the relied upon testimony by Thomas–Smith was the following:

Q: And in that conversation, August of 2002, whatever statement that was, that was said, do you believe it was lawful?

A: Yes. Whatever statement was said in the conversation about the teaching load or whatever, I believe it was lawful.

\* \* \* \*

Q: When you were asked about whether it was lawful, what did you, what was your definition of being lawful?

A: Well, within the role and scope of my job and not against the constitution, or policies or whatever.

Q: [I]f the statement was made that you say may have been made, and that statement was that you, Dr. Rambally and Dr. Mackin have a lover relationship, and that is why you wanted to appoint him as inter-

im dean, interim department, would that be lawful?

A: Sir, if I said that, it would be lawful. However, this testimony does not raise a fact issue on the good faith element of official immunity because: (1) it does not address the good faith standard (whether a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred); (2) it is Thomas–Smith's subjective view rather than evidence of an objective standard; and (3) it is conclusory, providing no factual basis or foundation to support the stated conclusion. Accordingly, we overrule the portion of Thomas–Smith's fifth issue that challenges the trial court's denial of her request to submit a jury question on official immunity and turn to her challenge the denial of a jury question on the defense of qualified privilege.

■■■■■ Where, as here, there is not alleged to be a public figure plaintiff, a media defendant, or a defamatory statement involving a matter of public concern, the falsity of the statement is generally presumed,[5] and the truth of the statement is an affirmative defense that must be proved by the defendant. *See Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995). Similarly, in the absence of a privilege, malice[6] is inferred from the fact that a defamatory statement is false. *See Int'l & G.N.R. Co. v. Edmundson,* 222 S.W. 181, 183 (Tex. Comm'n App.1920, holding approved); *Bradstreet Co. v. Gill,* 72 Tex. 115, 121, 9 S.W. 753 (Tex.1888). Conversely, where a defama-

tory statement is privileged, the inference of malice is overcome, and it becomes the plaintiff's burden to establish malice by evidence other than the falsity of the statement, if any. *Id.*

■■■ In this case, Thomas–Smith requested a jury question on whether she was entitled to the following qualified privilege:

> "Qualified privilege" exists when a communication is made in good faith and the author, the recipient, or a third person has an interest that is sufficiently affected by the communication. The effect of the privilege is to justify the communication which is made with proper motive and without actual malice. A finding of actual malice must be supported by clear and convincing proof.[7]

There is no dispute that such a qualified privilege exists under Texas law. *See, e.g., Cain v. Hearst Corp.,* 878 S.W.2d 577, 582 (Tex.1994). Because Thomas–Smith pleaded the affirmative defense of qualified privilege, the trial court was required to submit this question if the defense was raised by the evidence. *See* Tex.R. Civ. P. 278.

In that regard, Thomas–Smith testified that she made the comment during discussions on a subject about which she had a duty to communicate with Rambally. At the time, Rambally needed to fill the position of interim head of the Chemistry Department, and needed Thomas–Smith's approval to do so. Thomas–Smith and Rambally also had the mutual task of coordinating Mackin's teaching load as a chemistry professor following a reduction

---

5. *See Hurlbut v. Gulf Atl. Life Ins. Co.,* 749 S.W.2d 762, 766 (Tex.1988).

6. In this context, a statement is made with malice when it is made with either knowledge of its falsity or reckless disregard whether it is true. *Randall's,* 891 S.W.2d at 646.

7. Definitions of "actual malice" and "clear and convincing proof" were also submitted with this question but are not material to our disposition.

in force. Thomas–Smith made the comment during a telephone conversation with Rambally concerning these matters. This evidence was sufficient to raise a fact issue whether the comment was made concerning a matter on which Thomas–Smith and Rambally had a common interest.

Mackin argues that Thomas–Smith was not entitled to this instruction because the comment was: (1) published to Knebel, who did not share the common interest; (2) not made in good faith; and (3) made with malice.

■■■■■ As to the first contention, if a defamatory statement is privileged, the casual or accidental presence of a third party will not take it out of the privilege. *Flowers v. Smith,* 80 S.W.2d 392, 393 (Tex.Civ. App.-Amarillo 1934, no writ). The Restatement thus explains:

> One privileged to publish defamatory matter may, without abuse of the privilege use a method of communication that involves an incidental publication of the defamatory matter to persons to whom he is not otherwise privileged to publish it, if the method, although not the only way in which the information can be effectively communicated, is customary and sanctioned by business or other necessity. Thus the fact that dictation to a stenographer involves as a necessary incident the communication of the defamatory matter to her does not make the sending of a dictated business letter to the person to whom the writer is privileged to send it an abuse of the privilege. So too, the fact that it is a business custom for clerks and secretaries to open business correspondence of their superiors does not make the sending of a business letter to the office of the privileged recipient an abuse of the privilege. On the other hand, when the method of communication is unnecessary

and unsanctioned by the a custom based on ordinary necessities of business, the publication of the defamatory matter to persons not privileged to receive it that is incidental to those methods is not privileged. Thus the use of a postcard in place of a letter is an excessive publication. So too, the use of a telegram to communicate information that could be effectively communicated in a sealed letter is an excessive publication, although it would not be so if the information, to be valuable, must be speedily received.

Restatement (Second) of Torts § 604 cmt. b (1977). In this case, when the comment was made, Knebel was in Rambally's office to do filing, a task Knebel occasionally performed while, as here, Rambally was on the speaker-phone. Under these circumstances, the publication of the comment to Knebel did not itself conclusively negate the existence of a qualified privilege so as to preclude a jury question on that defense.

■■■■ Mackin's contention that a jury question on qualified privilege should not have been submitted because there is no evidence raising a fact issue on good faith is based on the meaning of that phrase as an element of the defense of official immunity, *i.e.,* whether a reasonably prudent Provost could have believed that her conduct was justified. However, we can find no authority suggesting that the definition of good faith for official immunity also applies to the defense of qualified privilege. Therefore, the failure to submit a question on the defense of qualified privilege cannot be affirmed on the lack of evidence, if any, of good faith as it would apply to official immunity.

Texas cases refer to the concept of "good faith" in the context of qualified privileges in an inconsistent manner. Some describe good faith as being presumed where a conditional privilege exists

(as if it is simply the non-existence of malice),[8] whereas others refer to it as an element of the conditional privilege,[9] and, thus, something that must be proved before the privilege arises. In addition, we have found no Texas cases which define "good faith" in this context. Because no formal legal definition appears to exist, "good faith" would have had its commonly understood meaning pursuant to the court's general charge to the jury.[10] Because the circumstances surrounding the making of the comment are at least sufficient to raise a fact issue on whether it was made in good faith, as that term is commonly understood, the failure to submit a question on qualified immunity cannot be affirmed on a lack of evidence of good faith.

▮ Lastly, Mackin argues that Thomas–Smith was acting with malice because she had no evidence that Mackin and Rambally had a "love" or "lover" relationship that would influence Rambally's decision making. Mackin further points to evidence that Thomas–Smith was aware that Mackin was married with children.

▮ In this context, malice means making the defamatory statement with knowledge of its falsity or in reckless disregard as to its truth. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991); *New Times*, 146 S.W.3d at 162. However, because there was evidence that the comment was subject to a qualified privilege, Mackin had the burden to prove malice, *i.e.*, that Thomas–Smith actually entertained serious doubts as to the truth of the comment. *See Masson*, 501 U.S. at 510, 111 S.Ct. 2419; *New Times*, 146 S.W.3d at 162. Moreover, the qualified privilege can exist even when the statement is untrue or its truth is disputed.[11] Therefore, a lack of evidence of the truth of the comment would also not preclude a jury question on the qualified privilege defense.

▮ Because the defense of qualified privilege was properly raised by the pleadings and evidence, the trial court's refusal to submit Thomas–Smith's requested jury question on that defense was reversible error. *See Perez*, 842 S.W.2d at 631.

---

**8.** *See, e.g., Edmundson*, 222 S.W. at 183 ("If the occasion is privileged, a proper and sufficient motive is shown; and thereby the inference of malice is repelled, and in lieu thereof the presumption obtains that the communication was made in good faith."); *Simmons v. Dickson*, 110 Tex. 230, 213 S.W. 612, 612 (1919) (reciting both standards).

**9.** *See, e.g., Cain*, 878 S.W.2d at 582 ("Qualified privileges against defamation exist at common law when a communication is made in good faith...."); *Diamond Shamrock Ref. & Mktg. Co.*, 844 S.W.2d 198, 210 (Tex.1992) (same); *Perry Bros. Variety Stores, Inc. v. Layton*, 119 Tex. 130, 25 S.W.2d 310, 313 (Tex. 1930) (same); *Missouri Pac. Ry. Co. v. Richmond*, 73 Tex. 568, 575, 11 S.W. 555 (1889) ("We understand the law to be that a communication made in good faith, in reference to a matter in which the person communicating has an interest, ... is privileged...."); *Bradstreet*, 72 Tex. at 119–20, 9 S.W. 753 ("whatever was said orally by defendants about plaintiffs and their business was said in good faith, and in confidence to their subscribers, who were by reason of their business relations with the plaintiffs interested in knowing their financial and business standing, and in answer to requests made by their subscribers in relation thereto. This being so, the statements thus made by defendants are privileged communications.").

**10.** This instruction stated, "When words are used in this charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning."

**11.** *See, e.g., Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896, 898–99 (Tex.1970); *Bradstreet*, 9 S.W. at 757; *Richmond*, 11 S.W. at 557–58.

Therefore, we sustain Thomas–Smith's fifth issue to that extent, reverse the judgment of the trial court, and remand the case to the trial court for further proceedings; and we need not address Thomas–Smith's remaining challenges to the judgment.[12]

**12.** *See* Tex.R.App. P. 47.1 (requiring an appeals court opinion to be as brief as practicable in addressing the issues raised that are necessary to final disposition of appeal).