

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

---

**NO. 2-07-290-CV**

---

PHILIP HADLOCK                                                    APPELLANT

V.

TEXAS CHRISTIAN UNIVERSITY,                                       APPELLEES
MARY VOLCANSEK, SHARON
FAIRCHILD, JEFFREY TODD,
YUMIKO KEITGES, JEAN KNECHT,
AND WILLIAM POHL

------------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Philip Hadlock appeals from a summary judgment for Appellees

Texas Christian University ("TCU"), Mary Volcansek, Sharon Fairchild, Jeffrey

Todd, Yumiko Keitges, Jean Knecht, and William Pohl on Hadlock's defamation

---

[1] *See* Tex. R. App. P. 47.4.

claims. Because we hold that Hadlock failed to point out sufficient evidence to defeat Appellees' no-evidence motion for summary judgment, we affirm.

Hadlock began working at TCU in 1998 as an instructor of French. He was appointed to a tenure track position beginning in the fall of 1999. Hadlock was given a positive performance evaluation for each academic year through his five-year tenure probationary period. On January 21, 2004, Volcansek, dean of the college in which Hadlock taught, provided her recommendation to William Koehler, provost and vice chancellor at TCU, that Hadlock be granted tenure and a promotion to associate professor.

The modern languages department held a meeting on February 20, 2004, at which Fairchild, the department chair, discussed the progress the department was making in its search for a professor of German. The parties dispute what happened at the meeting, but everyone agrees that Hadlock and his wife, also an untenured faculty member of the department, objected that they had not been included in the search process. According to Appellees, Hadlock expressed his objections vehemently and aggressively and "cast[] suspicion on the motives" of the search committee and other faculty members. According to Hadlock, he was not accusatory at the meeting and did not rise out of his chair or use profanity, but he did become irritated and raise his voice.

2

On February 23, 2004, Fairchild met with Volcansek and described to her the February 20 meeting. Two days later, on February 25, Fairchild and tenured faculty members Knecht, Todd, Keitges, and Pohl ("the Faculty") sent to Volcansek a letter retracting their recommendation that Hadlock be granted tenure and stating that they were concerned that Hadlock had violated TCU's Statement on Professional Ethics—guidelines applicable to professors and instructors at the school—by expressing disrespect to colleagues and by refusing to accept opinions that differed from his own. Volcansek forwarded this letter to Koehler with a brief note of her own.

On March 8, the Faculty met with Hadlock and, without informing him of the letters that had been sent to Koehler, told him that the Faculty had serious concerns about his behavior. Then on March 10, the Faculty gave to Volcansek another letter regarding Hadlock; this letter was almost identical to the letter of February 25. Todd authored another letter on March 22 describing behavior by Hadlock that the Faculty had found to show disrespect for his colleagues. Volcansek forwarded this letter to Koehler, noting that in light of the allegations contained within it, she withdrew her recommendation that Hadlock be granted tenure.

Koehler ultlimately recommended denying tenure to Hadlock, and TCU gave Hadlock a terminal contract for employment for the 2004–05 academic

year. According to Koehler, he recommended denying Hadlock tenure because enrollment in the French program was so low that an additional tenured professor would be a waste of resources.

Hadlock filed suit against Appellees for breach of contract and defamation. The trial court granted partial summary judgment for Appellees on Hadlock's breach of contract claim, and he did not appeal from that judgment.

In Hadlock's defamation claims, he contended that (1) the Facutly had alleged in writing that Hadlock had engaged in professional misconduct and had violated recognized standards of professional ethics; (2) Fairchild had made a number of verbal statements to colleagues at TCU and at other academic institutions to the effect that Hadlock had engaged in misconduct; and (3) Volcansek had alleged in writing that Hadlock had demonstrated hostility and a lack of respect toward his colleagues and that if he were granted tenure he would hinder development of a community of scholars in the department. Appellees filed a combined traditional and no-evidence motion for summary judgment on these claims. The trial court granted the motion without specifying the ground or grounds on which the motion was granted, and Hadlock appeals from that judgment.

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the

4

ground that there is no evidence to support an essential element of the nonmovant's claim or defense.[2] The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.[3] We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered.[4] If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.[5]

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i).[6] If the appellant failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the appellee's

---

[2] Tex. R. Civ. P. 166a(i).

[3] *See* Tex. R. Civ. P. 166a(i) & cmt.; *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

[4] *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 197 (Tex. 2002); *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000).

[5] *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

[6] *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

summary judgment proof satisfied the less stringent rule 166a(c) burden.[7]

Hadlock brings a *Malooly* point on appeal, asserting generally that the trial court erred by granting summary judgment for Appellees.[8] In Hadlock's arguments, he first attacks Appellees' no-evidence summary judgment ground alleging that there was no evidence of a defamatory communication. He contends that more than a scintilla of evidence raised a fact issue on this element.

Because Appellees asserted a no-evidence motion, Hadlock had the burden to point out evidence in support of the challenged elements in order to prevent summary judgment.[9] Hadlock had to specifically identify the evidence he wished the trial court to consider; a trial court is not required "to wade through a voluminous record to marshal a respondent's proof."[10] And the

---

[7] *Id.*

[8] *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970) (stating that appellant's assertion on appeal of a broad point challenging the summary judgment in its entirety is sufficient to allow argument as to all possible grounds on which summary judgment should have been denied).

[9] *See* Tex. R. Civ. P. 166a(i) & cmt.

[10] *See DeGrate v. Executive Imprints, Inc.*, 261 S.W.3d 402, 408 (Tex. App.—Tyler 2008, no pet.); *see also Arredondo v. Rodriguez*, 198 S.W.3d 236, 238 (Tex. App—San Antonio 2006, no pet.); Tex. R. Civ. P. 166a(i) & cmt. ("To defeat a motion made under paragraph (i), . . . [a nonmovant's] response need only point out evidence that raises a fact issue on the challenged elements.").

record in this case was voluminous: Hadlock's own evidence and the evidence of Appellees, which he incorporated as summary judgment evidence, consisted of over 800 pages. Thus, we look to Hadlock's response to the motion and determine if he pointed out to the trial court evidence raising a fact issue on Appellees' no-evidence grounds.[11]

A defamatory statement may be made orally or in writing.[12] Slander is "a false oral statement that is published to a third person without a legal excuse, which refers to an ascertainable person."[13] Libel is defamation in written or printed form.[14] Not every statement about a person that depicts the person in a negative light is actionable as libel. "A libel is a defamation . . . that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation."[15] A statement "may be false, abusive, unpleasant, or objectionable to the plaintiff and still not be defamatory

---

[11] *See* Tex. R. Civ. P. 166a(i) & cmt.

[12] *AccuBanc Mortg. Corp. v. Drummonds*, 938 S.W.2d 135, 147 (Tex. App.—Fort Worth 1996, writ denied).

[13] *Id.*

[14] *Id.*; Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (Vernon 2005).

[15] Tex. Civ. Prac. & Rem. Code § 73.001.

7

in light of the surrounding circumstances."[16] Whether a statement is capable of a defamatory meaning is a question of law for the court unless the statement is ambiguous.[17] To be actionable as defamation, a statement must be an assertion of verifiable fact (that is, a statement that purports to be verifiable); purely subjective assertions (that is, opinions) that do not imply the existence of undisclosed facts or do not misconstrue the facts are not actionable as defamation.[18]

We have reviewed Hadlock's response, and regarding his slander claim against Fairchild, we are unable to find where Hadlock pointed to any specific spoken statement by Fairchild as defamatory. He alleged that Fairchild told Punch Shaw, a TCU adjunct professor, that the February 20 meeting was the

---

[16] *Columbia Valley Reg'l Med. Ctr. v. Bannert*, 112 S.W.3d 193, 198 (Tex. App.—Corpus Christi 2003, no pet.); *see also Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000) ("[A]n allegedly defamatory publication should be construed as a whole in light of the surrounding circumstances."); *Phelan v. Texas Tech Univ.*, No. 07-07-0171-CV, 2008 WL 190741, at *11 (Tex. App.—Amarillo Jan. 23, 2008, pet. denied) (mem. op.) (holding that, reading email as a whole in light of surrounding circumstances, indirect reference to professor as a "creep" and writer's description of professor's behavior as "dysfunctional" were not defamatory).

[17] *Turner*, 38 S.W.3d at 114.

[18] *Bentley v. Bunton*, 94 S.W.3d 561, 583–84 (Tex. 2002); *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 382–83 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see also Thomas-Smith v. Mackin*, 238 S.W.3d 503, 507 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

turning point on his tenure and that until that meeting everything was fine. Hadlock did not argue how such a statement was defamatory or even expressly allege that it was defamatory. And in the excerpt of Shaw's deposition pointed out by Hadlock, Shaw only said that he had been given the impression that Hadlock was close to getting tenure and that he got the impression that "something turned in that faculty meeting" because he knew that after the meeting, the department no longer supported Hadlock's tenure. He stated that Fairchild "never told [him] the particulars of the faculty meeting." Thus, Hadlock failed to point out any evidence of a spoken defamatory communication by Fairchild to Shaw.[19]

Hadlock also stated that in the March 8 meeting, those present "began confronting [him] with allegations of misconduct." He failed to allege what allegations were made or who made them or to point to any evidence of defamatory statements made by Fairchild at the meeting. Thus, he failed to present any evidence of slander based on this meeting. Because Hadlock did not point out any other evidence of slander in his response, the trial court

---

[19] *Brown*, 178 S.W.3d at 382–83 (holding that because plaintiff did not provide any evidence about the substance of the "negative information," unflattering emails, and "disparaging things" that he alleged were defamatory, trial court correctly granted no-evidence summary judgment on defamation claim based on those statements).

9

correctly granted summary judgment on his slander claim.[20]

With respect to his libel claim against Appellees, Hadlock referenced in his response the two letters written by the Faculty and the two letters written by Volcansek. He stated that the "general tenor" of the letters was that he acted unethically and was guilty of misconduct and that the letters contained "numerous" statements that were untrue. But Hadlock specifically pointed out only a few statements within those writings as being defamatory. We have considered each statement pointed out by Hadlock and have determined that the statements are not defamatory.

In his response, Hadlock primarily took issue with Appellees' characterization of his behavior as hostile or disrespectful. The crux of Hadlock's defamation claim was his contention that Appellees had asserted that he acted unethically and unprofessionally and was guilty of misconduct. He cited *Bentley* for the proposition that the Faculty's opinions were actionable because they implied the existence of verifiable facts demonstrating unethical behavior.

What the Faculty essentially said was that they believed his behavior showed disrespect for the opinions of his colleagues, which in their opinion

---

[20] *See* Tex. R. Civ. P. 166a(i).

10

violated TCU's Statement on Professional Ethics, specifically the provision stating, "Professors do not discriminate against or harass colleagues. They respect and defend the free inquiry of associates. In the exchange of criticism and ideas professors show due respect for the opinions of others." The Faculty asserted that they believed Hadlock had violated these criteria "by expressing disrespect of colleagues and refusing to accept opinions that differ from his own."

The Faculty did not express their opinion so as to *imply* the existence of facts to back up their opinion; rather, they set out verifiable assertions of fact and then stated that, from those asserted facts, they formed the opinion that Hadlock had shown disrespect for his colleagues. Their opinions were purely subjective assertions.

This case is not like *Bentley*, where the defendant said, without giving facts in support of his assertion, that the plaintiff was corrupt and assured his audience that he had seen evidence to back up his claim, never telling the audience what the facts were or what acts of the plaintiff constituted corrupt behavior.[21] Unlike the defendant in *Bentley*, Appellees did not imply the existence of fact and then fail to disclose them — they did not drop dark hints

---

[21] *Bentley*, 94 S.W.3d at 584.

11

about Hadlock's unethical and unprofessional behavior in a way that implied that they were basing their opinion on verifiable facts. They laid out the behavior that they considered to be a problem, stated that such behavior was characteristic of Hadlock's attitude, and then stated that their ethics rules required professors to show due respect for the opinions of colleagues and that they believed his behavior violated that standard. And we note that for the most part, Hadlock did not dispute the facts Appellees set out in support of their opinion.[22] Hadlock can disagree that it shows a lack of respect for his colleagues to, for example, raise his voice in a faculty meeting, but they are entitled to their opinions, and they are also entitled to express those opinions.[23] Appellees' statements regarding their opinion about Hadlock's behavior violating TCU's policies are not actionable as defamation.

Although Hadlock argued generally that Appellees had defamed him by accusing him of acting unethically, he did point to a few specific assertions by Appellees that he contended were defamatory. One such assertion was a

_____

[22] Those facts that he does dispute are discussed below. *See infra* p. 15.

[23] *See Thomas-Smith*, 238 S.W.3d at 507; *see also Phelan*, 2008 WL 190741, at *12 (holding that interdeparmental email statements were not stigmatizing as a matter of law when terms "creep" and "dysfunctional" were used in popular rather than clinical sense and Appellant produced no evidence that statements were stigmatizing other than statements themselves and his legal conclusion that they were stigmatizing).

statement in the March 22 letter that according to Hadlock contended that he "too aggressively participated in the decision to choose an outside consultant for the program degree." The letter actually said that the Faculty, including Todd, "had felt Hadlock had been unnecessarily acrimonious." The letter elaborated that Hadlock was "incensed that the matter had not been debated and that various candidates had not been considered" and that he reacted "vociferously" to the announcement that a candidate had been chosen. This statement does not appear to defame Hadlock; although it is not flattering, it is not necessarily injurious to his reputation, especially considering that the letter Hadlock referred to went on to say that Todd felt that Hadlock had a point and proposed a meeting to discuss the issue and that as a result of the meeting, the search for a consultant was reopened. Furthermore, Todd did not appear to be accusing Hadlock of any particular behavior other than expressing his views in an acrimonious way. Todd's statement that the Faculty found Hadlock's manner of expressing his disagreement to be acrimonious is clearly a subjective assertion and therefore not actionable.[24]

Hadlock also objected to Appellees' statements regarding the February 20 meeting. In two of the letters, the Faculty stated that in the meeting, Hadlock

---

[24] *See Thomas-Smith*, 238 S.W.3d at 507 (holding that purely subjective assertions are not actionable as defamation).

"expressed objections in an extremely vehement and aggressive manner, casting suspicion on the motives of the search committee and other faculty members." While not expressly stating in his response that this statement was defamatory, Hadlock did dispute its accuracy—he stated that he "was not accusatory of anything" and that he "did not question the motives of the people at the department meeting," and he pointed to his deposition testimony to support his view of events. In that testimony, he denied accusing anyone of anything at the meeting but admitted that he had become irritated and had raised his voice. Furthermore, attached to one of the letters that Hadlock alleged contained defamatory statements was a February 22 email from Hadlock in which he stated that, with respect to the search for a new German professor, "I find it neither hostile nor unreasonable for faculty members to raise questions about this matter, and I wonder about the motivations of anyone who would try to silence or suppress those questions." Hadlock acknowledged that there was a dispute in the meeting, that he expressed dissent, that he became irritated, and that he raised his voice. Thus, Hadlock did not really dispute the gist of the Faculty's factual assertions but rather their characterization of his expression of disagreement as "vehement" and "aggressive." But their view of his behavior was a purely subjective assertion and not actionable as

14

defamation.[25]

The only purely factual assertion in the letters pointed out by Hadlock in his response as defamatory were statements that on two occasions, he slammed a door on a colleague. He contended that these statements were untrue and defamatory. We disagree that a statement that he slammed doors rises to the level of defamation, unflattering though it may be.[26] This is particularly true where the rest of the letter contains factual assertions unchallenged by Hadlock as either untrue or defamatory—such as assertions that he left meetings in a huff when he disagreed with decisions made in them, that he sent a colleague an email "wonder[ing] about the motives of anyone who would try to silence or suppress" his questions about the search for the German professor, that he sent another email stating that to deny him a voice in the matter was "a hostile gesture," and that he sent Fairchild a letter stating that TCU did not follow the academic tradition of considering dissent and debate productive. That is, if the other statements were either true or not defamatory, then an assertion that Hadlock slammed doors could not have injured his reputation.

---

[25] *See id.*

[26] *Bentley*, 94 S.W.3d at 587 (stating that a defamatory statement is one that is injurious to reputation).

Hadlock did not point out in his response any other specific statements by Appellees as being defamatory.  Because we have held that the statements that Hadlock did point to as evidence of a defamatory communication were not defamatory, the trial court did not err by granting a no-evidence summary judgment on that ground.[27]  We overrule Hadlock's issue.

Having overruled Hadlock's issue, we affirm the trial court's judgment.


LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT and MCCOY, JJ.; and DIXON W. HOLMAN, J. (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  February 26, 2009

---

[27] *See* Tex. R. Civ. P. 166a(i).