

**NUMBER 13-08-00211-CV**

# COURT OF APPEALS

# THIRTEEN DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GERALD SANSING,                                               **Appellant,**

**v.**

CARLOS GARCIA,                                              **Appellee.**

### On appeal from the 319th District Court of
### Nueces County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Benavides
### Memorandum Opinion by Chief Justice Valdez

Appellant Gerald Sansing appeals from a traditional summary judgment that was granted in favor of appellee Carlos Garcia. In a single issue, advanced by six sub-issues, Sansing contends that the trial court erred in granting summary judgment. We affirm.

## I. BACKGROUND

The underlying suit is the result of a rancorous relationship between Sansing, a

tenured biology professor at Del Mar College, and Garcia, the college president. The

discord came to a crescendo in November and December 2006. During a November 14,

2006 public meeting of the Del Mar College Board of Regents, Garcia delivered an oral

report, in which he stated, in relevant part, that there were "a handful of individuals in that,

our community who are just, uh, very much interested in tearing this community college

down, again, you know, I, I apologize for those individuals." On November 21, during a

"public-comment" session of a board of regents meeting, Sansing publicly commented on

Garcia's statement. On November 26, Sansing memorialized his public comments in an

e-mail to Garcia, writing:

> I will repeat what I said during the public comments session of the November 21, 2006, Del Mar College Board of Regents meeting in response to your outrageous remark on November 14, 2006 that there are a handful of people (including me) that are out to destroy Del Mar College. I stated that if I were trying to destroy Del Mar College, there would not be a brick still standing. It appears that you have been doing the destroying and that several of us "little people" have been trying with every fiber of our bodies to prevent you from accomplishing your destruction.

On December 1, Garcia made the following relevant remarks at a faculty council meeting[1]:

> If you have a problem, or if you believe, if you perceive that you have a problem with your re-accreditation process on your credentials certificate, I would urge you to meet with Dr. Garcia. Give us an opportunity to stick with you and figure out how it is to best help you meet whatever criteria the Southern Association has, so that we don't have risks, we don't end up losing accreditation, closing the doors because someone decided that that's not, you know, what they want, because I'm retiring or whatever you're doing. I'm going to leave, I've got another, job, I've got another offer. Please consider that the rest of us are going to remain. The rest of us need to be here and the rest of us need to have also a future in which to move, and that's the important thing. Please consider all of that . . . .

> One of our faculty members said, I went over there and my credentials, my transcripts are missing. We've got to get rid of this administration. He shows up with his best friend, goes to the office and says I want to see my files.

---

[1] The record does not show who attended the faculty council meeting or whether it was a public event.

2

Now why would the honorable, Full Professor Dr. Sansing want to see his files? What is he afraid of? So we share the files. You guys want to see your file? You're welcome to see your files. Any of you can come go through your file. Now I'm not alleging that Dr. Sansing was going to pull stuff out of his file, you know, when nobody's watching . . . . I didn't say that, or perhaps Dr. Reid . . . I don't know. The transcript wasn't there. The reason why the transcript was not in the file is because we're having to process the transcript to do exactly what we need to do, get ready for accreditation. Some of us will be ready for accreditation.

Now what goes out on e-mail, though, is we've got to get rid of that administration, that nefarious, evil administration, we've got to stop it. Well, I wish somebody would tell me why. I mean, what is it that Dr. Garcia has done? What is it that I have done or what is it that Vicky has done or anybody else has done that is so nefarious and evil that we want to destroy the staff of this college?

Or, better yet, to have one of our senior faculty speak in an open forum saying, you know, if I want to destroy this college, not one brick would be left. And you're sitting there thinking, my God, this guy is a [tenured] faculty member here, and we pay this individual all this money to come and teach and he just told the Corpus Christi community and the world on tape, if I wanted to destroy this college not one brick would be left. And then he supplements it by putting it in writing a second time, so when you're reading it, it gives you a chilling effect. There was a chilling effect for me to read one of our faculty members airing their [sic] rights if I wanted to destroy not one brick would be left. Right? Now why was that chilling for me? Because, as an administrator, I go to all these conferences and we talk about risks, and they say note, if you ever had an employee or an individual that shoots up a dorm, an individual or an employee that does something damaging to the institution, they always leave clues behind. They always tell you, and then you shouldn't be surprised when they do it, because, hey, you were told, so now one of our seasoned senior faculty says in an open comment, posts it on the record and then writes it down in an e-mail, and then everybody gets to see. So is that the kind of environment that we need? I would suggest not. So please consider all that.

But first and foremost, accreditation is beyond losing Federal funding. And No. 2, if you really believe that there's a problem with any of your credentials for re-accreditation, meet with Dr. Garcia. Have a genuine opportunity to stick with you to figure out, as a team together, figure it out so that we are not at risk whenever re-affirmation [sic] occurs. We are committed, I am committed to ensure that for every single one of you that's on the faculty that your credentials are what SACS wants them to be, that you're teaching what SACS want you to teach. We are committed to helping you. Let's get there together. Let's stop this nonsense of division and driving a wedge between us at this college. We're all in the same boat.

3

I'm the biggest cheerleader you will ever have in this community. I have never, ever said our faculty is second rate, our faculty is bad, our faculty is awful. There's a handful of people who say that. I would just ask you to stop it. It's all utter nonsense. You're a very good faculty. You have an excellent reputation nationwide; you have an excellent reputation across the State. One of the reasons why I'm here is because you have such a good reputation. And when those among you tell, oh, the reputation of this college is going down the tubes, oh, we're terrible as an institution. When you hear elected officials say stuff like that in public, please follow them and tell them of all the good things that we're doing. Because the truth is, this is one of the best institutions there is in this country, and don't let anybody, anybody ever tell you otherwise, because if they do they're lying to you, it's not true. It's not true.

Thank you.

Sansing sued Garcia and Del Mar College for intentional infliction of emotional distress, slander, and fraud. Garcia and Del Mar College answered with general denials and asserted several affirmative defenses, including sovereign immunity. Del Mar College filed a plea to the jurisdiction, which the trial court granted. Meanwhile, Garcia moved for a no-evidence summary judgment on Sansing's intentional infliction of emotional distress and fraud claims. Additionally, Garcia's motion for summary judgment asserted six grounds for traditional summary judgment on Sansing's slander claim. As evidentiary support for his motion for traditional summary judgment, Garcia attached, among other things: (1) excerpts of Sansing's deposition testimony, (2) excerpts of Garcia's November 14 oral report to the board, (3) a transcript of Garcia's December 1 remarks at a faculty council meeting, (4) an e-mail from Sansing to Garcia sent on November 26, and (5) an affidavit by Garcia. Sansing responded to Garcia's traditional motion for summary judgment and tendered his own affidavit testimony.

The trial court granted Garcia summary judgment on all causes of action without specifying the grounds relied upon. This appeal followed.

4

## II. DISCUSSION

In a single issue, advanced by six sub-issues, Sansing challenges the trial court's summary judgment as to his slander claim.[2] In his first sub-issue, Sansing contends the trial court erred in holding that Garcia's remarks at the faculty council meeting were not capable of a defamatory meaning.

### A. Standard of Review

We review traditional summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When a summary judgment does not specify the grounds on which it was granted, we will affirm the judgment if any one of the theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

A traditional summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In reviewing a summary judgment under rule 166a(c), we must indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Dorsett*, 164 S.W.3d at 661. A defendant who moves for summary judgment on the plaintiff's claim under rule 166a(c) must conclusively disprove at least one element of the plaintiff's cause of action. *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004).

---

[2] Sansing did not respond to Garcia's no-evidence grounds for summary judgment. On appeal, Sansing does not challenge the trial court's summary judgment as to his intentional infliction of emotional distress and fraud claims. Therefore, we will not address them. Additionally, Sansing's response centered only on Garcia's December 1, 2006 remarks to the faculty council. Accordingly, we will focus our review on those remarks. *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

## B. Applicable Law

Slander is a defamatory statement orally communicated or published to a third person without legal excuse. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995); *Austin v. Inet Tech., Inc.*, 118 S.W.3d 491, 496 (Tex. App.–Dallas 2003, no pet.). A statement is defamatory if the words tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury. *Austin*, 118 S.W.3d at 496; *Cecil v. Frost*, 14 S.W.3d 414, 417 (Tex. App.–Houston [14th Dist.] 2000, no pet.). Whether Garcia's statement is capable of a defamatory meaning is generally a question of law for the court. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154 (Tex. 2004). But when a publication or statement is of doubtful import, the jury must determine its meaning. *Id*.

Under Texas law, even if individual statements, considered in isolation, are literally true or non-defamatory, a publication can convey a false and defamatory meaning by omitting or juxtaposing facts. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000). Whether a publication is false and defamatory depends on a "reasonable person's perception" of the entire publication, not merely individual statements. *Id*. at 115. A publication as a whole may be defamatory if the publication creates a false impression. *Id*. at 117-18.

## C. Analysis

As his first ground for traditional summary judgment, Garcia asserted that his remarks at the faculty council meeting were not capable of a defamatory meaning. Sansing responded by noting that his comments at the November 21 board meeting and his e-mail of November 26 were satirical in nature and that a reasonable person would

recognize their benign meaning. Sansing argued that by repeating his comments and describing Garcia's own reaction to the comments, Garcia recounted Sansing's comments in a defamatory manner by juxtaposing their effect on him and by failing to frame the satirical nature of the comments within the broader dispute. Sansing relies on *Isaacks* for the proposition that some satire is not actionable as defamation. 146 S.W.3d at 161 (holding that the satire at issue could not reasonably be understood to state actual facts about the claimants).

Sansing's reliance on *Isaacks* is misplaced. The focus of our inquiry in determining whether Garcia's remarks imparted a defamatory meaning is not on whether Garcia's remarks adulterated or mischaracterized the satirical meaning of Sansing's comments, but instead, it is on how a reasonable person would interpret Garcia's entire remarks. *See Turner*, 38 S.W.3d at 115. As to the reasonable person analysis, Sansing argues that Garcia's remarks went beyond mere opinion and "had the effect of telling the audience that Sansing had made a credible threat of violence against the college campus" by "mischaracterizing Sansing's prior comments." He asks us to focus on the following lines from Garcia's remarks:

> There was a chilling effect for me to read one of our faculty members airing their [sic] rights if I wanted to destroy not one brick would be left. Right? Now why was that chilling for me? Because, as an administrator, I go to all these conferences and we talk about risks, and they say note, if you ever had an employee or an individual that shoots up a dorm, an individual or an employee that does something damaging to the institution, they always leave clues behind. They always tell you, and then you shouldn't be surprised when they do it, because, hey, you were told, so now one of our seasoned senior faculty says in an open comment, posts it on the record and then writes it down in an e-mail, and then everybody gets to see.

We, however, cannot review the statement line-by-line and must review the entire publication to determine its "gist." *See Turner*, 38 S.W.3d at 115.

7

A review of Garcia's December 1 remarks at a faculty council meeting by a reasonable person shows that: (1) Del Mar College was undergoing a "re-accreditation process"; (2) Sansing had accused the administration of failing to include his transcript in his file; (3) Sansing sent an allegedly hostile e-mail to Garcia, which included the phrase "if I were trying to destroy Del Mar College, there would not be a brick still standing"; (4) Sansing's comment allegedly had a "chilling effect" on Garcia; (5) as an administrator, Garcia was concerned about the "kind of environment" that the e-mail created; (6) Garcia claimed to be the college's biggest "cheerleader"; and (7) Garcia appealed to the faculty to stop the division because members of the college community were "all in the same boat." The "gist" of Garcia's remarks is that there was acrimony between the administration and Sansing, and the acrimony was counterproductive. Therefore, the remarks do not convey a defamatory meaning as a matter of law.[3]

The blending of undisputed facts and opinion in a defamation suit is an issue that was recently handled by the Fort Worth Court of Appeals. Earlier this year, that court affirmed a summary judgment granted in favor of college administrators in a defamation suit that was brought by a former faculty member. *See Hadlock v. Tex. Christian Univ*., No. 2-07-290-CV, 2009 Tex. App. LEXIS 1330, at *18 (Tex. App.–Fort Worth Feb. 26, 2009, pet. denied) (memo op.). In *Hadlock*, college administrators had initially recommended tenure for Hadlock, but rescinded their recommendation because, in their opinion, Hadlock violated college policy by "expressing disrespect to colleagues and by refusing to accept opinions that differed from his own." *Id*. at *2. Hadlock sued for defamation and the

---

[3] Even if we were to hone in on the lines Sansing highlights, those sentences would not be actionable as defamation because Garcia's remarks included undisputed facts—Sansing's comments—and opinion—that based on his training, it was Garcia's opinion that Sansing's conduct posed a potential threat of violence.

administrators moved for a no-evidence summary judgment on, *inter alia*, the ground that the comments at issue were not defamatory. *Id*. at **6-7. The trial court granted summary judgment, and the court of appeals affirmed. *Id.* at *18. The appeals court noted that the administrators (1) laid out the behavior they considered to be a problem; (2) detailed the ethics rules, which professors were required to follow; and (3) stated their belief that Hadlock had violated the rules. *Id*. at *13. The court then held that, under the facts of the case, the administrators were entitled to their opinions. *Id*. (citing *Thomas-Smith v. Mackin*, 238 S.W.3d 503, 507 (Tex. App.–Houston [14th Dist.] 2007, no pet.)). The *Hadlock* court noted that the administrators "did not drop dark hints about Hadlock's unethical and unprofessional behavior in a way that implied that they were basing their opinion on verified facts." *Id*. In other words, the administrators' opinions were clearly based on their individual beliefs regarding how the ethical rules should apply. *See id*.

Clearly, Sansing was sufficiently offended by Garcia's remarks to bring the underlying suit. Yet, we have stated that a statement "may be false, abusive, unpleasant, or objectionable to the plaintiff and still not be defamatory in light of the surrounding circumstances." *Columbia Valley Reg'l Med. Ctr. v. Bannert*, 112 S.W.3d 193, 198 (Tex. App.–Corpus Christi 2003, no pet.). Like the administrators in *Hadlock*, Garcia's opinions are clearly an expression of his own belief. A reasonable reading of Garcia's entire remarks shows that he was conveying his belief that Sansing's comments and conduct were inappropriate. Accordingly, Garcia's remarks are not actionable as defamation. Sansing's first sub-issue and his sole issue are overruled.[4]

### III. CONCLUSION

---

[4] Because our disposition of Sansing's first sub-issue is dispositive, we need not address his remaining sub-issues. *See* TEX. R. APP. P. 47.1.

9

The judgment of the trial court is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Memorandum Opinion delivered and filed
on this the 22nd day of October, 2009.